## MAJOR NOBLE

*v.*

## CATHARINE NUGENT *et al.*

1. AGENCY—*when payment to agent is good.* Payments made to an agent are good and obligatory upon the principal in all cases where the agent is authorized to receive payment, either by express authority, or by that resulting from the usage of trade, or from the particular dealings between the parties.

2. Where a person procured a loan of money from a party living some distance away in the country, on deed of trust security, taking one of the notes payable to himself, and fixed the terms of the loan, and the proof showed that such person for a number of years was the general agent of the lender in the city to loan and collect moneys for him, and that such person furnished him with statements of moneys received on his account and reinvested or paid to him, and that several of the payments made by the borrower had been paid to him by such agent, and various payments of interest after the maturity of the debt, it was *held*, the principal was bound by subsequent payments made to such agent, without notice given by him to the borrower not to pay to him.

3. SAME—*when special.* The authority of an agent being limited to a particular business, does not make it special; it may be as general in regard to that as if its range was unlimited.

4. SAME. *The act of a general agent,* or one whom a man puts in his place to transact all his business of a particular kind, will bind the principal· so long as the agent keeps within the scope of his authority, though he may act contrary to his private instructions.

APPEAL from the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

Mr. H. C. IRISH, for the appellant.

Mr. F. H. DICKEY, and Mr. JOHN JOHNSON, Jr., for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The question here arises upon bill filed to foreclose a deed of trust executed by appellee Catharine Nugent, whilst sole and unmarried, to one Runyan, as trustee, to secure the payment of certain notes executed by her to appellant, and cross-bill by appellees against appellant, to have the notes declared paid and the deed of trust and notes canceled, etc. The decree below was in favor of appellees upon the cross-bill, denying the foreclosure prayed by appellant.

The proofs show that the notes secured by the deed of trust were paid by appellee Catharine long before the filing of the bill to foreclose, to Runyan, though not surrendered up or canceled, and that Runyan, thereupon, executed to her a formal release of the deed of trust.

The only question is, whether Runyan was authorized to receive the payment of the notes.

The general principles of the law applicable to the question are well settled.

Payments made to an agent are good and obligatory upon the principal, in all cases where the agent is authorized to receive payment, either by express authority, or by that resulting from the usage of trade, or from the particular dealings between the parties. Story on Agency, § 429.

The authority of an agent being limited to a particular business, does not make it special; it may be as general in regard to that as if its range was unlimited. *Anderson* v. *Coonley*, 21 Wendell, 279. The acts of a general agent, or one whom a man puts in his place to transact all his business of a particular kind, will bind the principal so long as the agent keeps within the scope of his authority, though he may act contrary to his private instructions. *The United States Life Insurance Co.* v. *The Advance Co.* 80 Ill. 549; *Harris* v. *Simmerman et al.* 81 id. 413.

It was said in *Doan et al.* v. *Duncan*, 17 Ill. 274, "We should not confound the *extent* of the agent's authority, whether limited or unlimited, with the *nature* of the *agency*, whether general or special. * * * Either, acting within the general scope of the authority held out to the world by the principal, will bind him. And this may be shown by the usual acts of such agent in his principal's business, or by permitting and acquiescing in such acts when known to him, as well as by express authority and direction. The policy and reason of the rule is for the protection of the innocent, who deal upon the faith of such authority as the principal holds out or permits as being authorized and sanctioned by him. If an innocent party is to suffer, it shall fall upon him who enables the supposed agent, under his authority, to impose on others. See also, Story on Agency, § 127; 2 Kent's Com. (8 ed.) 798–9, side 614.

There were three notes secured by the deed of trust, one for $500, and the other two for $25 each. Appellee Catharine Nugent, then being unmarried and bearing the name of Catharine Myers, borrowed $500, and the note for that amount was given for the principal, and the other two for interest to accrue on the loan. She testifies that she went to Runyan's office and applied to him to borrow the money; that Runyan informed her there was a gentleman in the country from whom he could obtain it; that on the day she got the money she again went to Runyan's office, signed the papers he prepared for her to sign,

and got the money; that she did not meet appellant, or even know the name of the man from whom the money had been obtained. She says that she did not know the nature of the papers she signed; that her brother-in-law had told her whatever Runyan did would be right, and she, therefore, trusted entirely in him; and that Runyan told her when she came in and paid money, he would give her a receipt. She made payments, from time to time, taking Runyan's receipts, until she completed the payment of all that was due on the notes. When she made final payment she asked for the $500 note, and Runyan said he was busy, just then; that there was a gentleman in the country had got it that was away traveling, and he had not time to get it for her. She says he then gave her the release of the trust deed. She denies that she ever knew that the appellant owned the money, or claimed to own it, until shortly before he filed his bill. Runyan testifies, corroborating her fully as to the fact and mode of payment, his giving her receipts and the release of the deed of trust, etc. He says, further, that he loaned the money to appellee Catharine as appellant's agent, and that it has all been paid in full; and he makes this response in answer to one of the interrogatories propounded to him: "I was authorized to receive the payments, by Major Noble; I had full authority from him to collect any and all moneys that were owing to him, at that time, and had such authority for more than ten years prior to July, 1876, and to use the money or reloan it, as I might think best. In fact, everything due him in Chicago was charged to me, and I controlled the same as though it were my own."

He also testifies to paying appellant $200 of the money paid him by the appellee Catharine, on the $500 note; that appellant never gave him notice, prior to July, 1876, that he must not collect funds due from the appellee Catharine, or from any one else; that appellant called at his office, twice each year, to settle, and receive such funds as he might wish out of the collections made by witness, and the remainder was left in the hands of witness. He says the $500 note was not paid at

maturity, and that appellee Catharine could not pay it then; that he, witness, had the right to collect or not, as he saw fit; that he had the absolute control of all moneys of appellant loaned in or about Chicago, and could extend on time or foreclose, as he saw fit; that appellee Catharine was a working woman and could not raise as much money as a business man, but could pay in small installments, and he permitted her to do so. In response to another interrogatory, he says: "As I before stated, the matter was solely under my control, and not under Major Noble's. It was for me to say whether I would accept money, release deeds, or extend the times of payment. This authority was given me by him and never countermanded by him." 'And again he says: "I kept a book account with Major Noble; he has a copy of it, but I am not in a position to give you a copy of it, as you request." This deposition was taken in Lincoln, Nebraska.

Without entirely discrediting this evidence it is impossible to say that Runyan's authority to receive the money was not ample. The circumstance that the notes were not surrendered, as against clear proof that they were paid to a person having authority to receive payment, amounts to nothing. Their possession is simply presumptive evidence of non-payment, which may always be overcome by proof that they were in fact paid.

Appellant directly contradicts appellee Catharine, as to. several material matters testified to by her, and denies *in toto* Runyan's evidence as to his authority to make collections for him. We think there are several circumstances, about which there is no dispute, that go very far to corroborate Runyan's evidence.

The notes were all payable at Runyan's office, and one of the $25 notes was payable directly to him. Appellant lived in the country, some distance from Chicago, but had no other place in the city in which to transact his business than Runyan's office. He admits to attending there, twice a year, to receive moneys due him. He admits that Runyan made out

statements, from time to time, which he presented to him, showing moneys collected for him, etc., but fails to produce such statements.  He admits the payment of the two smaller notes, the payment of $200, and also payments of interest to March, 1873, September, 1873, March, 1874, September, 1874, March, 1875, September, 1875, and to March, 1876, on the $500 note, all received by him from Runyan.  The principal note matured September 21, 1871, and he was authorized by the deed of trust to then proceed to have the property covered by it sold for non-payment of the note.  Runyan's deed releasing the deed of trust bears date June 30, 1873, and it was filed for record on the 5th of July, following.  Appellant makes no pretense that he ever called upon appellee Catharine, in regard to this matter, until June, 1876.  His admissions, then, show that for nearly five years he looked only to Runyan in regard to this matter, receiving money from him from time to time, as Runyan reported it collected, and strongly corroborate the view that Runyan had the entire control of the collection.  Appellant says he was introduced to appellee Catharine at Runyan's office, when she got the money, and that Runyan then told her that the money belonged to appellant.  He, however, admits that Runyan did all the writing; that he himself lay back on the sofa and took no part in the conversation, and simply took the papers after they were executed, when Runyan gave them to him.  He does not deny what she says Runyan told her about making payments.  And so, we think, all the circumstances show that appellee Catharine was justified in assuming that Runyan had authority to receive the payments, whatever was the actual relations between him and appellant.

It looks very much as if the circumstance of Runyan's subsequent insolvency may have materially changed the view in which appellant regarded him.

In our opinion the evidence amply sustains the decree, and it will, therefore, be affirmed.

*Decree affirmed.*