FINANCE COMPANY OF PENNSYLVANIA v. OLD PITTSBURGH COAL COMPANY.[1]

July 8, 1896.

Nos. 10,024—(277).

**Instructions—Sufficiency of Exceptions.**

> The court below charged the jury as to the law of custom or usage as applicable to the facts in evidence. The only exception taken was "to the explanation and enunciation of the law of custom and the application thereof, as applied to the facts of this case." *Held* too general, and of no avail.

**Same—Repetition of Charge.**

> *Held*, further, that the trial court did not err when it declined to instruct the jury on the law of custom and usage in the language found in one of plain-

[1] Reported in 68 N. W. 70.

tiff's requests, because, although in different form, it was a repetition of a part of the general charge.

**Purchase by Sales-Agent—Liability of Principal—Duty to Exercise Diligence.**

The law does not impose upon a party who produces an article for sale the duty of exercising diligence and prudence that he may seasonably discover that an agent or clerk specially employed by him to sell h's wares, and clothed with no other authority, apparent or real, is so far exceeding his authority to sell as to engage in purchasing from rival concerns, on his employer's account, the very article the latter is producing and selling.

Appeal by plaintiff from an order of the district court for Hennepin county, Smith, J., denying a motion for a new trial, after a verdict in favor of defendant.   Affirmed.

*Boardman & Boutelle*, for appellant.

*Young & Fish*, for respondent.

COLLINS, J.   This action was brought by plaintiff against defendant, both nonresident corporations, and known to the trade as "producing companies," to recover the value of certain coal which had been delivered to a "sales-agent," that is: an agent selling on commission, and upon his order.   The only question litigated before the jury resolved itself into two inquiries:   First, is there a custom arising from usage existing in and peculiar to the coal trade, whereby one who is a sales-agent becomes in fact an agent with power to bind his principal in the purchase of coal from other dealers?   If not, second, was defendant informed that this sales-agent was ordering and receiving the coal in its name, and on its credit, assuming to have authority so to do, and did defendant, having this information, acquiesce therein. On these issues it will be seen that the case was a simple one.   But plaintiff's counsel saw fit to present to the learned trial court 15 requests to charge, many of which lacked conciseness, and would have tended to confuse, instead of to enlighten, the jury.   The court declined to give these requests as submitted, and charged the jury upon the points involved in its own language.

In December, 1894, one Tucker entered into defendant's employ at Minneapolis as a sales-agent, or an agent to sell its coal on commission.   The authority actually conferred upon him was to solicit orders for coal, forward them to defendant's Chicago office, where they were approved, and ordered to be filled from the home station, the

coal being sent direct to the purchaser, and pay therefor being collected by the person in charge of the Chicago office. Tucker's commissions were also sent to him from this office. Any further or other authority possessed by Tucker would have to be inferred or implied from the fact that he was actually a sales-agent; that defendant knew that he had opened an office at which a sign bearing defendant's name was displayed, together with another sign, on which was the name of an oil company for which Tucker was selling goods on commission, and also knew that he kept books of account and a bookkeeper, and was using defendant's letter heads and cards, furnished from the Chicago office, on which his name appeared as sales-agent. The coal over which the ligitation arose was sold and delivered within four months after Tucker entered into defendant's employ.

It appeared from the testimony that Tucker called at plaintiff's office in Minneapolis, presented one of defendant's cards with his name printed thereon as sales-agent, obtained prices, and soon afterwards commenced to order coal. There was no claim on the trial that, in the absence of a usage or custom, the compound word "sales-agent" would have any more significance, or mean anything more, than the word "salesman." But plaintiff's contention was that by a custom peculiar to the coal trade a practice had grown up, and by usage the power had been given to sales-agents, to order and purchase coal from other concerns for and on account of the agent's principal. The claim was that this custom was so general and uniform, and the usage so long established and so well known, as to have acquired the force of law. The testimony of quite a number of witnesses was introduced on this branch of the case; by plaintiff to show that this custom and practice was uniform in the coal trade, had existed and had been acted on for a long time, and was generally recognized, and by defendant to show that there was no such custom, and never had been. On the evidence the existence or nonexistence of this custom was, we assume, for the jury, and, if so, a finding either way could not be disturbed. The court below submitted the question of the existence of this custom to the extent claimed by appellant's counsel in clear and comprehensive language, and no doubt the law applicable to the evidence on this point was well understood by the jury; and the only exception taken was "to the explanation and enunciation of the law of custom and the application thereof, as

applied to the facts of this case." This exception is useless, because too general. We have held that an exception "to each and every part of the charge" is insufficient, and the one now before us is open to greater criticism than that.

But counsel, by one of their assignments, claim that the court erred when it declined to give their fourteenth request in the exact language in which it was written, even if the court had already correctly stated the law upon the subject of custom and usage. Admitting that the propositions contained in the request were correct in the abstract, it is obvious that it was nothing but a repetition, in a little different form, of the rule for ascertaining whether a particular usage or custom has acquired the force of law, and of the further rule that, if it has, persons dealing with each other conformably to such established custom, and in reliance upon its existence, will be bound thereby. The court had already charged the jury that plaintiff claimed that the title or designation "sales-agent" gave to Tucker general authority not only to sell his principal's coal, but to purchase coal from other parties to a reasonable extent, and was so treated by custom and usage among coal dealers; that the claim that Tucker was acting within the scope or apparent scope of his authority rested upon the fact that such custom or usage had been established by the evidence; and if they found, under the rules already stated, that such was the custom, they could say that Tucker was acting within the apparent scope of his authority, and his principal would be bound to pay plaintiff for its coal. This really covered all that was contained in the fourteenth request, and, had counsel's language been adopted, it would have been simply a change in the form of the statement. We do not deem it necessary to discuss further the charge on this branch of the case, or the requests made by counsel and rejected by the trial judge.

From the evidence it appeared that the president of defendant corporation visited Minneapolis January 15 and 16, 1895, and was in Tucker's office. The first sale of coal by plaintiff on Tucker's order had been made a few days before, and the party who was then bookkeeper for the latter testified that the president was then shown one of plaintiff's invoices or bills of coal, in which defendant was designated as purchaser. From this plaintiff claimed that defendant had actual knowledge of Tucker's acts, and, not repudiating, had acqui-

esced therein. This evidence bore upon the second question in litigation before referred to. But the president was also a witness upon the trial, and emphatically denied that such an invoice or bill was shown him, or that he was informed in any way that Tucker was dealing with other parties. The jurors seem to have believed the witness last named, and to have concluded that the ex-bookkeeper was untruthful. It was for the jury to determine between these two men, and the issue arising out of their contradictory testimony was fully presented by the court in its charge.

But counsel seem to have thought that the evidence was ample to support a finding that defendant was liable, because in some manner it had neglected properly to supervise Tucker while he was in Minneapolis, and on this phase of the case submitted eight separate requests to charge. The substance of these reiterations was that, if Tucker was employed as an agent, opened an office, whereon he placed a sign bearing defendant's name, conducted business openly and in the ordinary manner, kept a set of books showing his business transactions, including entries respecting the purchases from plaintiff, and used letter heads bearing defendant's corporate name, with his own as agent, it was defendant's duty to discover what was going on, if it could have been discovered by the use of ordinary diligence and prudence; and that neglect to perform its duty in this respect would amount to what counsel termed "guilty ignorance," equivalent to and the same as actual knowledge of Tucker's acts and a failure to promptly repudiate the same. It was conceded that Tucker was defendant's sales-agent, duly empowered to sell coal upon orders; that he opened an office; that he displayed the sign; that he kept books; that he used the letter heads; so that, if the requests had been given, the jury would have been instructed that, if ordinary diligence and prudence would have disclosed the fact that Tucker was exceeding his authority, was purchasing coal instead of selling, it was defendant's duty to exercise such diligence and prudence, and, failing so to do, it became liable.

We have yet to learn of any rule of law or morals which imposes upon a producing merchant the duty of exercising diligence and prudence to discover that his agent or clerk, specially employed to sell his wares, and clothed with no other authority, apparent or real,—for instance, a salesman or sales-agent for a coal-producing company,—

is so far exceeding his authority to sell as to engage in purchasing from others on his employers' account the very article the latter is producing and selling. It would be startling should we hold that the many agents scattered through this Western country for the special purpose of selling farm machinery, but having offices, displaying signs, using letter heads, and keeping books of account, as did Tucker, have such authority, and can bind their principals, if they choose to purchase on such principal's credit machinery produced by rival companies, unless such principals exercise ordinary diligence and prudence to discover such unwarranted and unexpected acts. And yet that is the logic of these requests. No such rule ever prevailed, or ever will, for it is radically opposed to the settled principles which govern dealing with agents by third parties. On the question of authority of an agent of a business concern, and how a principal may be bound by the appearance of authority which his negligent conduct of his business permits his agent to have, see Columbia Mill Co. v. National Bank of Commerce, 52 Minn. 224, 53 N. W. 1061.

Several of the 28 specifications of error are directed to rulings of the court when receiving the testimony. We have examined all, and find no error. Nothing more need be said.

Order affirmed.