(No. 15205.—Judgment reversed.)

PAUL MURRAY, Admr., Defendant in Error, *vs.* THE STANDARD PECAN COMPANY, Plaintiff in Error.

*Opinion filed June 20, 1923—Rehearing denied October 3, 1923.*

1. PRINCIPAL AND AGENT—*principal is not bound by unauthorized acts of agent.* As a general rule, a principal is not bound by acts of his agent not within the scope of the agent's authority unless such acts are ratified by the principal.

2. SAME—*party dealing with special agent must take notice of his authority.* A party dealing with a special agent, or an agent having only special authority to act for his principal, must acquaint himself with the extent of the agent's authority.

3. SAME—*when corporation is not bound by agent's unauthorized agreement in sale of stock.* An agent employed to sell stock of a corporation at par value, with authority to fill in the blanks with the name of the purchaser, the number of shares and the dates of sale, is not authorized to write on the back of the certificate an agreement of the corporation to re-purchase the stock; and where the corporation repudiates the agreement when first informed thereof, several years after the stock was sold, it is not bound by the unauthorized act of the agent even though it retains the money paid for the stock.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. EDWARD BARRY, Judge, presiding.

LIVINGSTON & WHITMORE, (STELLA E. WHITMORE, of counsel,) for plaintiff in error.

STONE & DICK, for defendant in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

In September, 1912, R. M. Nicholson, the authorized agent to sell stock of the Standard Pecan Company, a corporation, sold Mrs. A. G. Murray 100 shares of stock of the corporation at $10 per share. He wrote on the back of the stock certificate an agreement that the Standard Pecan Company would re-purchase the stock at the end of three years at $11 per share, and signed the corporation's name to it. Mrs. Murray died within three years of the date of the sale, and when the three years expired her heirs gave the Standard Pecan Company written notice of their election to re-sell the stock to the company in accordance with the agreement written by its agent on the stock certificate. The corporation refused to re-purchase the stock and the administrator of Mrs. Murray brought suit to recover under the agreement. The corporation based its refusal to re-purchase the stock on the ground that its agent had no authority to make any agreement for its re-purchase, and it repudiated said agreement. A trial was had in the circuit court of McLean county, resulting in a judgment in favor of defendant, which was reversed by the Appellate Court and the case remanded for a new trial. The second trial resulted in a judgment in favor of plaintiff for $1100, with five per cent interest, which judgment was affirmed by the Appellate Court, and upon petition of the Standard Pecan Company this court granted a writ of *certiorari,* and the case is brought here for further review.

The case was tried in the circuit court on a stipulation of facts. It was stipulated Nicholson was the authorized agent of the defendant corporation and had authority to sell its stock for cash at the rate of $10 per share, which was the par value. Certificates were signed and sealed with the corporate seal of the company by the president and sec-

retary and delivered to Nicholson in blank, with authority to fill the blanks, in case of sale, with the name of the purchaser, the number of shares sold and dates of sale. He had no authority to sell stock with an agreement providing for its re-purchase. When he sold the stock to Mrs. Murray, without the knowledge or consent of the company and without reporting the same to it he wrote on the back of the certificate:

"It is hereby agreed that the Standard Pecan Co. shall at the end of three years from date re-purchase this stock at $11 (eleven) per share, upon thirty days' notice. The owner does not need to sell said company the stock unless she so desires.

STANDARD PECAN CO.,<br>per R. M. Nicholson."

The certificate of stock, with that indorsement, was delivered to Mrs. Murray, whereupon she paid Nicholson $1000, which he paid over to the Standard Pecan Company. It was stipulated the company did not know of the indorsement on the certificate for a re-purchase of the stock until three years from the date of its purchase had elapsed, when the company received a communication from the heirs of Mrs. Murray demanding a re-purchase of the stock in accordance with the writing on the back of the certificate. Upon receipt of the communication the company replied refusing to re-purchase the stock, and repudiated the agreement to re-purchase for the reason its agent had no authority to make any such agreement.

It is not claimed Nicholson had any authority to agree to re-purchase the stock, but plaintiff contends the agreement to re-purchase was part of the transaction in the sale of the stock, and the law will not permit defendant, after knowledge of the unauthorized agreement made by its agent, to retain the benefits of the sale and repudiate the agreement made by its agent to re-purchase. All authorities agree that the general rule is, a principal is not bound by the acts of his agent not within the scope of his authority. Where the principal ratifies his agent's unauthorized

acts, he is, of course, bound.  When one deals with a special agent, or an agent who has only special authority to act for his principal, it devolves upon the person dealing with such agent to acquaint himself with the extent of the agent's authority.  Nicholson was what is known in law as a special agent of defendant.  His only authority was to sell defendant's stock at a given price.  When he had sold the stock to Mrs. Murray for the authorized price and collected the money he had done all he had any authority to do.  Defendant never had any knowledge of its agent's unauthorized act until three years had elapsed after the sale of the stock.  Immediately on being notified its agent had signed its name to an agreement to re-purchase the stock defendant repudiated the agreement.

Plaintiff's contention is that after the defendant learned of the unauthorized act of its agent, if it claimed the benefit of the sale it was its duty to comply with the unauthorized agreement of its agent to re-purchase the stock.  We do not think the rule contended for applies to cases of this character.  There is a rule that where a principal, with knowledge that his agent has exceeded his authority in securing a contract, attempts to enforce the contract the agent had authority to make, he will not be permitted to do so and repudiate the agent's fraud or unauthorized act in securing it.  That rule applies to executory contracts, but where, as in this case, the only authority of the agent is to unconditionally sell stock, collect and account to his principal for the proceeds of the sale, and without his principal's knowledge the agent agrees that his principal will re-purchase the stock, the principal is not bound by the unauthorized agreement of the agent.  So far as the principal is concerned the sale is not conditional, and retaining the money for the stock under such circumstances is not a ratification of the agent's unauthorized agreement.  *Wheeler v. Northwestern Sleigh Co.* 39 Fed. 347; *Finance Co. of Pennsylvania v. Pittsburg Coal Co.* 65 Minn. 442; *Daven-*

*port Loan Ass'n* v. *North American Fire Ins. Co.* 16 Iowa, 74; 2 Corpus Juris, 515; *Tulane University* v. *O'Connor,* 192 Mass. 428; *Bryant* v. *Moore,* 45 Am. Dec. 96. See, also, note to *Brewing Co.* v. *Tourtellotte,* 29 L. R. A. (N. S.) 210.

We are of opinion the circuit and Appellate Courts misapplied the law to the uncontroverted facts. The judgments of the Appellate and circuit courts are reversed.

*Judgment reversed.*