## Kuzma Burba, Appellee, v. Baltic-American Line, Inc., Appellant.

### Gen. No. 28,875.

1. AGENCY—*duty to know special agent's authority.* One who deals with a special agent is ordinarily bound to ascertain the extent of the agent's authority.

2. AGENCY—*binding acts within apparent authority.* Whether an agency be general or special, as between the principal and third parties, the principal is bound by all acts of the agent which are within the apparent scope of his authority.

3. AGENCY—*estoppel by holding out to deny agency.* In a suit against a steamship company to recover money paid to an agent of defendant for tickets for transportation of plaintiff's family from Poland, where it appeared that for four months prior and nine months subsequent to the time plaintiff paid the money such agent sold tickets for defendant, having a regular place of business with signs advertising defendant, and plaintiff relied upon the agent's appearance of authority and had no notice of any limitation

thereon, defendant cannot be heard to deny, to the prejudice of plaintiff, the authority of such agent to act for it.

Appeal by defendant from the Municipal Court of Chicago; the Hon. JOSEPH BURKE, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1923. Affirmed. Opinion filed May 27, 1924.

FRED W. BENTLEY and MAX GUTHMAN, for appellant.

FELIX J. STREYCKMANS and D. FRANCIS BUSTIN, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

By this appeal defendant seeks to reverse a judgment against it for money paid to one of its ticket agents for steamship tickets which were never delivered.

Defendant operates a line of steamships between Baltic ports and New York, carrying both freight and passengers. It has a general agency in Chicago and sells its tickets through local agents on a commission basis. In April, 1921, one Shakalski was one of its local agents in Chicago. He had an office in the central part of the city for the sale of steamship tickets. On the doors and windows of his office were the signs of the Baltic-American Line, and on the walls pictures of steamships were hung. He was supplied by defendant with a book of printed forms of tickets, upon which was set forth the terms and conditions of what was therein called a "prepaid passage contract," with blank lines upon which the selling agent wrote the names of the purchaser and the passenger, the amount paid, the starting point, destination, and other like matter. These forms were divided by perforations into five parts, and each part contained a direction on the margin, printed in red ink, as to what use should be made of that part. The first part, labeled "Prepaid Passage Notice, Baltic-American

Line," was marked: "This portion is to be sent to the passenger." The second part, which was in the form of a receipt, with nineteen paragraphs of terms and conditions printed thereon, was labeled: "Purchaser must keep this receipt." The other three parts contained memoranda of the sale, evidently intended for defendant's records, with marginal directions to the selling agent, to fill in the blanks, sign and send them "to the general agent who supplies you with these tickets."

Plaintiff was living in Chicago, and his wife and four children were in Warsaw, Poland. He wanted to bring his family here. With that end in view, in company with a friend—a Russian priest—he visited Shakalski's steamship ticket office. They told him they wanted to buy tickets for the plaintiff's family over defendant's steamship line. After some conversation, plaintiff paid to Shakalski $926.12 for that purpose. Shakalski gave plaintiff his personal receipt, which states that the money was received for the transportation of plaintiff's family—naming them —from Warsaw, Poland, to Chicago. According to the testimony of plaintiff's companion, Shakalski "wrote out a form" of steamship ticket, upon which the witness saw the words "Baltic-American Line" printed in large letters, and told them he would "send it right over to the passengers." No tickets were ever received by the plaintiff's family, and it is reasonably certain that no tickets were ever sent. During the following year plaintiff twice inquired about the matter, but was told by Shakalski that some difficulty had been experienced in getting passports, and that plaintiff must wait. Finally, the priest instituted inquiries, and soon after, Shakalski absconded. So far as the record shows, he never reported the sale to the defendant, and defendant denies all knowledge of the transaction.

On the trial, defendant's general agent at Chicago testified that Shakalski was one of defendant's ticket

agents and that he was authorized to sell tickets for the transportation of passengers over defendant's steamship line and the lines of connecting carriers, from Warsaw to Chicago. It is insisted, however, by defendant's counsel, that he was a special agent only, having authority from defendant to sell only such tickets as were supplied to him by the defendant, and no others, and that because of that fact the plaintiff was bound, at his peril, to acquaint himself with the extent of Shakalski's authority before paying him any money as the agent of defendant.

The general rule is that one who deals with a special agent is ordinarily bound to ascertain the extent of the agent's authority. (*Murray v. Standard Pecan Co.*, 309 Ill. 226; *Blackmer v. Summit Coal & Mining Co.*, 187 Ill. 32.) But this rule is subject to the qualification, whether the agency be general or special, that as between the principal and third persons, the principal is bound by all acts of the agent which are within the apparent scope of his authority. 2 Corpus Juris 570; 21 R. C. L. 906; *Faber-Musser Co. v. William E. Dee Clay Mfg. Co.*, 291 Ill. 240, 244; *Nash v. Classen*, 163 Ill. 409, 414; *Thurber & Co. v. Anderson*, 88 Ill. 167; *Noble v. Nugent*, 89 Ill. 522; *St. Louis & Memphis Packet Co. v. Parker*, 59 Ill. 23.

The case last cited is particularly in point. The plaintiff in that case delivered to one who represented himself to the public and to plaintiff to be the agent of the defendant company, certain freight to be carried on defendant's boats from one point to another on its route, and when defendant was sued for an alleged breach of the contract to safely keep and carry such freight, it interposed the defense that the agent was a special agent, whose authority was limited to the city in which he was acting as defendant's agent. The Supreme Court approved an instruction given on behalf of the plaintiff stating ''that when a party employs an agent in a public employment, such as that of a public common carrier, and suffers such agent to

advertise himself as such an agent, the principal cannot, by private instructions, limit the authority of the agent, and thereby avoid responsibility as such principal.'' In the same case, the defendant tendered an instruction to the effect that defendant had the right in selecting its agent at the city of Cairo, to limit his authority to bind or contract for defendant, to said city of Cairo. The trial court modified the offered instruction by adding a clause to the effect that if the jury find from the evidence that defendant employed the person named as its agent at Cairo, ''and permitted him to advertise his name as agent, without noting such limitation, the plaintiff would not be bound by such limitation, unless you find, from the evidence, that he had notice'' that the agent's power was so limited; and the Supreme Court sustained the modification. In the same case, the defendant tendered two instructions containing the proposition ''that an agent for a public common carrier, published to the world as a general agent of such carrier, may set up in defense of his principal any private instructions he may have received, or limitations upon his supposed general powers, imposed by such principal.'' The Supreme Court said: ''Such a proposition is inadmissible.''

In Mechem on Agency (2d Ed.), sec. 246, the author says that ''it may be stated as a general rule that whenever a person has held out another as his agent, authorized to act for him in a given capacity * * * whether it be in a single transaction or in a series of transactions—his authority to such other to so act for him in that capacity will be conclusively presumed to have been given, so far as it may be necessary to protect the rights of third persons who have relied thereon in good faith and in the exercise of reasonable prudence; and he will not be permitted to deny that such other was his agent, authorized to do the act he assumed to do, provided that such act was within the real or apparent scope of the presumed

authority.'' The rule so stated was referred to with approval in the case of *Union Stock Yard & Transit Co. v. Mallory,* 157 Ill. 554.

It appears from the evidence that Shakalski was appointed defendant's agent December 14, 1920, and sold tickets for defendant until January 21, 1922. Therefore, it appears that for a period of four months prior to the time plaintiff paid his money to Shakalski, and for a period of nine months thereafter, defendant held out Shakalski as its agent, authorized to act for it in the capacity of ticket agent, and during all that time defendant knew, or should have known, that Shakalski was assuming to act, and was advertising himself, as one of defendant's ticket agents. It also appears that when the money was paid, plaintiff relied upon the appearance of authority with which the defendant had clothed Shakalski, and that plaintiff had no notice of any limitation upon the apparent authority of Shakalski to accept the money of the plaintiff in payment for transportation of his family from Warsaw to Chicago. Under the authorities cited, the defendant cannot now be heard to deny, to the prejudice of the plaintiff, the authority of Shakalski in that regard.

It is also contended that the court erred in admitting evidence of what Shakalski said at the time the plaintiff paid him the money in question. That Shakalski was a ticket agent of defendant was admitted, and his declarations were admissible to show the extent of his authority as such agent. (*Faber-Musser Co. v. William E. Dee Clay Mfg. Co., supra.*)

For the reasons indicated, the judgment of the municipal court is affirmed.

*Affirmed.*

Gridley, P. J., and Barnes, J., concur.