(No. 3072—

Leo Klimczak, Stanley Levandowski, Walter Pilaski, Claimants, *vs.* State of Illinois, Respondent.

*Opinion filed October 10, 1939.*

Echt & Cole, for claimants.

John E. Cassidy, Attorney General; Murray F. Milne, Assistant Attorney General, for respondent.

Mr. Chief Justice Hollerich delivered the opinion of the court:

Claimants filed their complaint herein on March 25th, 1937, and alleged therein that on or about March 11th, 1936 they were employed as investigators by the Department of Public Welfare of the respondent, to make a survey of relief conditions in Cook County, at a salary of $125.00 per month; that they worked as such investigators from March 11th, 1936 to April 11th, 1936; that they have never been paid for their services, although they have made numerous requests therefor.

The Attorney General contends:

1. That the claimants were not employed by any representative of the State having authority to employ them.

2. That no appropriation had theretofore been made for the payment of investigators in the Department of Public Welfare.

3. That therefore the respondent is not liable to claimants for any services which they may have rendered.

The case has been submitted to the court upon the testimony of the claimants and the report of A. L. Bowen, Director of the Department of Public Welfare. The testimony of the claimants is to the effect that on March 8th or 9th, 1936, the claimant, Leo Klimczak, was Democratic Precint Captain of the 51st Precinct, 33d Ward, Chicago; that on said date he and the other claimants were in the Democratic Headquarters for said precinct and met Chester Kantowski, then a candidate for ward committeeman of said ward; that said Kantowski told them he had some work for them as welfare investigators at $125.00 per month, and gave each of the claimants a written assignment for work, and directed them to report at the Hotel LaSalle; that the next day they reported at said hotel where their assignments for work were taken up and identification cards were issued to them, with instructions to go to the Public Welfare Department located on the 18th floor of the Transportation Building; that each of said identification cards contained the name of the party to whom it was issued, as well as a statement to the effect that he was an investigator for the Department of Public Welfare at $125.00 per month; that they went to a room on the 18th floor of the Transportation Building, having on the door thereof the following sign, to-wit: ''Department of Public Welfare, State of Illinois;'' that a Mr. Levinson was at a desk in the rear of the office; that there were then present in such office a number of other persons who had similar identification cards; that Mr. Levinson took the cards, looked at them and said, ''Well, boys, I will put you to work. You are going to be relief investigators and you will work from this office. You will report twice a week and your pay will come from the Department of Public Welfare of the State of Illinois.''

Claimants further stated that each of such investigators was given a sheet purporting to be instructions to investigators, which was signed by Mr. Levinson in their presence; that they were handed a block of report cards and were instructed as to the manner in which the report cards were to be filled out, and were told to report to that office twice a week; that Levinson advised them that they would receive their checks every two weeks; that they need not worry about their money as the State of Illinois would pay them.

Claimants testified that they performed the work required of them, in accordance with the instructions given, and

that they worked from March 11th until April 11th; that they turned in their reports as requested; that the first reports were presented to Mr. Levinson; that he sent claimants to a young woman in the office to whom the reports were delivered; that all subsequent reports were also delivered to her; that claimants saw Mr. Levinson several times at the office, but did not speak to him at any time again; that they called at the office on numerous occasions for their pay checks, but the woman to whom they gave the reports said the checks had not yet arrived and would probably come in later; that thereafter they called for their checks on numerous occasions, but the same woman told them the checks were not in, but that she would notify them when they came.

Claimants also testified that there were others doing work similar to the work which they did, who had received their checks from such woman.

The report of the Director of the Department of Public Welfare is as follows:

"I am returning the enclosed declaration in the case of *Stanley Levandowski, et al.*, vs. *The State of Illinois*, Court of Claims No. 3072. I regret that I am unable to give you any information. Appointments of these three men were never requested of me, and I have never signed any appointment notices. Their names have never appeared on any payroll that has gone through the Department of Public Welfare."

Section three (3) of the State Civil Service Act (Illinois Revised Statutes, 1937, Chap. 24½) provides for the classification of all offices and places of employment in the State service except those expressly exempted in Section 11 of such Act. The office or employment of investigator for the Department of Public Welfare is not mentioned or included in said Section 11, and should therefore be included in the offices and places of employment classified under the Civil Service Act of this State.

Under the provisions of such Act, appointments to positions thereunder are required to be made from the register of eligibles for such position, which register is established by an examination by the Civil Service Commission. Section 10 of such Act provides that whenever a position classified under the Act is to be filled, the appointing officer shall make requisition upon said Commission, and the Commission shall certify to him the name and address of the candidate standing highest upon the register of eligibles for such position; also, that when there is no eligible list, the appointing officer may,

with the authority of the Commission, make temporary appointments to remain in force only until regular appointments under the provisions of the Act can be made.

The Civil Service Act also provides that in employments of an essentially temporary nature the appointing officer may, with the authority of the Commission, make temporary appointments to fill a vacancy; that immediate notice in writing shall be given by the appointing power to the Commission, of all appointments, permanent and temporary, in the classified Civil Service; and that the Commission shall certify to the State Auditor all appointments in the classified Civil Service.

There is nothing in the evidence to show that the claimants were selected from any eligible list pursuant to the requirements of the Civil Service Law, nor is there anything to show that they received a temporary appointment with the authority of the Commission. If the claimants held their offices or appointments under the Civil Service Act, they have failed to produce any evidence whatsoever to show such fact.

However, they do not specifically claim to be Civil Service appointees, and apparently base their right of recovery solely upon the appointment which they claim was made by Mr. Levinson. The record does not show what position, if any, Mr. Levinson held with the Department of Public Welfare, nor is there anything in the record to show his powers or duties, nor does the record show anything whatsoever with reference to the authority of Mr. Levinson to make any appointments in the Department of Public Welfare.

It is an elementary principle of law that parties dealing with an assumed agent are bound, at their peril, to ascertain not only the fact of the agency, but the extent of the agent's authority and power, and it is their duty to determine whether an act by him is within his power and is such as to bind his principal; also, that a person dealing with a special agent is bound, at his peril, to ascertain the extent of the agent's authority. *Ellis* vs. *Saline County Coal Co.*, 199 Ill. App. 219; *Merchants National Bank of Peoria* vs. *Nichols & Shepard Co.*, 223 Ill. 41; *Kuecks* vs. *New Home Sewing Machine Co.*, 123 Ill. App. 660; *Blackmer* vs. *Summit Coal etc. Co.*, 187 Ill. 32; *Murray* vs. *Standard Pecan Co.*, 309 Ill. 226.

In this connection it must also be noted that a distinction is recognized between the acts of an agent representing a pri-

114

vate individual or corporation and the acts of an agent representing a public corporation. This distinction is pointed out in the case of *Bouton et al. vs. McDonough County*, 84 Ill. 384, where the court, on page 395, said:

"Different rules prevail in respect to the acts and declarations of public agents, from those which ordinarily govern in the case of mere private agents. As to the latter, the principals are, in many cases, bound, where they have not authorized the declarations and representations to be made. But, in cases of public agents, the government or other public authority is not bound, unless it manifestly appears that the agent is acting within the scope of his authority, or he is held out as having authority to do the act, or is employed, in his capacity as a public agent, to make the declaration or representation for the government. * * *

"Where the officers or agents of a public corporation have no powers with respect to a given matter, we regard the rule to be, that neither their acts nor their individual knowledge in respect to the matter can, in any way, bind or affect such corporation."

The law, as announced in the *Bouton* case, has been cited with approval in many subsequent cases.

Nor does the fact that the claimants rendered the services for which they seek compensation, and the respondent received the benefit thereof, make the State liable on the ground of estoppel.

In applying the rule of estoppel, a distinction is also recognized between cases involving private individuals and cases involving the State. This distinction is clearly set forth in the case of *People vs. Brown*, 67 Ill. 435, where the court, on page 438, said:

"As between individuals, it is no doubt true, if one, by words or conduct, wilfully causes another to believe the existence of a certain state of things, and induces him to act upon it so as to change his previous condition, he will be estopped to deny the truth of the representation. As between the government and an individual, we have found no case holding the former would be estopped by any statement of its officials from recovering its own.

"It is a familiar doctrine, that the State is not embraced within the Statute of Limitations, unless specially named, and, by analogy, would not fall within the doctrine of estoppel. Its rights, revenues and property would be at fearful hazard, should this doctrine be applicable to a State. A great and overshadowing public policy of preserving these rights, revenues and property from injury and loss by the negligence of public officers, forbids the application of the doctrine. If it can be applied in this case, where a comparatively small amount is involved, it must be applied where millions are involved, thus threatening the very existence of the government.

The "doctrine is well settled that no laches can be imputed to the government, and by the same reasoning which excuses it from laches, and on the same grounds, it should not be affected by the negligence or even wilfulness of any one of its officials."

The rule as set forth in the *Brown* case has been recognized and applied in many cases since that time. *The People* vs. *Gary,* 196 Ill. 310; *The People* vs. *Union El. R. R. Co.,* 269 Ill. 212; *People ex rel. Smith* vs. *Woods,* 354 Ill. 224.

The burden of establishing the authority of Mr. Levinson was upon the claimants. *Kuhn* vs. *Pulaski County, etc. Co.,* 188 Ill. App. 279; *Fred Miller Brewing Co.* vs. *Jones,* 190 Ill. App. 169.

In the absence of any showing as to the position held by Mr. Levinson, the extent of his authority, and his right to appoint the claimants, we have no authority to allow an award.

It therefore becomes unnecessary to consider the other point raised by the Attorney General.

Award denied. Case dismissed.