Frances Morse, Appellee, v. Illinois Power and Light Corporation, Appellant.

Opinion filed March 9, 1938. Rehearing denied April 15, 1938.

E. Bentley Hamilton, of Peoria, for appellant.

Asa J. Wilbourn and Frank S. Gillespie, both of Cairo, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This suit was instituted by plaintiff, Frances Morse, to recover the amount she paid for 15 shares of the dividend cumulative preferred stock of the defendant company. Plaintiff bases her right of recovery upon the theory that the stock was sold to her by an agent of the defendant upon the condition that, if at any time after the expiration of six months, from the date of sale, she became dissatisfied with the stock, she could return the same to the defendant and she would be repaid the amount she had given for the stock. Defendant denies the agency of the salesman.

The cause was tried before the court without a jury and resulted in a finding and judgment in favor of plaintiff for $1,762.50.

On this appeal defendant in its printed brief urges various grounds for reversal but on oral argument its counsel stated that the defense of ultra vires and laches could be disregarded.

The remaining issues for discussion may be summarized as, (a) was the salesman, H. G. Barnett, the agent of the defendant, (b) did the defendant ratify the act, (c) is the defendant by reason of its acts and conduct estopped from denying the agency and a liability on the alleged repurchase agreement.

The evidence discloses that H. G. Barnett, an employee of defendant, principally engaged as a motorman and conductor in the operation of its street car and interurban lines in and around the city of Cairo in this State, solicited plaintiff to purchase some Illinois Power and Light Corporation stock with the result that on July 28, 1930 plaintiff purchased the 15 shares in question. She issued her check for $1,500 payable to the defendant. Barnett gave her a receipt as follows, ''Illinois Power and Light Corporation hereby acknowledges receipt of $1500.00 in full payment for 15 shares of the $6.00 (Dollar) Dividend Cu-

mulative Preferred Stock of the Illinois Power and Light Corporation to be issued in the name of Frances Morse whose address is

"700 34th. St. Cairo, Illinois.
(Street No.) (City) (State)
"This temporary receipt will be exchanged for permanent stock certificate and taken up upon delivery of certificate.

"Illinois Power and Light Corporation
"By H. G. Barnett
"Stock Sales Representative."

Thereafter she received by registered mail in an envelope bearing the return address of the defendant, the stock certificate.

Plaintiff testified that in 1926 Barnett sold her four shares of stock, the same as the ones in controversy except the former were 7 per cent stock while the latter were 6 per cent, and that Barnett told her at that time that if at any time she became dissatisfied with the stock she could turn them in to the company and she would receive her money back. She stated that after holding the stock for two or three years, in 1927 or 1928 she took the stock to the office of the defendant at Cairo, handed it to Sam Schmulbach, who was the local superintendent of the defendant at that place, and that later he gave her the defendant's check upon which she received her money.

Plaintiff and her son, Mack Morse, testified that when plaintiff purchased the stock in question Barnett said that the stock she was then purchasing was the same as she had previously purchased through him and that any time she wanted to return the stock to the Illinois Power and Light Corporation, they would take it and return her money but if the stock was returned within six months the company would deduct the amount of his commissions on the sale which was $2 per share. He said that the stock might go up but could not go down.

Mack Morse and Lunk Caldwell both testified that they were in the employ of the defendant as motormen and conductors working in and around Cairo in 1927 and 1928 and at that time Barnett was also employed by the defendant, that in 1927 and 1928 they attended meetings of the employees of the defendant where the matter of selling stock was discussed. They stated the meetings were called by Schmulbach, superintendent, and Davidge, traffic superintendent, and the employees were requested to attend, that one of said meetings was held in defendant's office and another at a cafe, that at these meetings Davidge and Schmulbach told the employees present to sell stock, that it was a good investment, that it paid 7 per cent interest, that it could be returned and cash would be paid at any time.

It also appears that from time to time the defendant advertised its stock for sale in the newspaper printed and published in Cairo and that in the issue of June 28, 1930 the following appeared, "Protect your income. Reinvest your July funds where they will earn you 6% net. Hundreds of individuals are planning to reinvest their July dividends, interest payments and proceeds of maturing obligations in Illinois Power and Light Corporation $6.00 dividend cumulative preferred stock.

"You, too, may have the same opportunity to purchase this attractive investment which pays you 6% net per year.

"Call the Local Office of Illinois Power and Light Corporation or ask any employee for complete information. Act now. Every day your funds lie idle means a loss of dollars and cents to you. Price per share $100.00 plus accrued dividends.

"902 Com.    Phone 1845
Illinois Power and Light Corporation
Profit as a shareholder in the Company.''

Attached to the advertisement was a coupon for one who sought information as to the stock and was addressed to the defendant. Plaintiff testified she read these advertisements.

The evidence introduced by the plaintiff as to her former ownership of stock, the return of same, and receipt of the money, the statements of Barnett, the meetings of the employees called by Schmulbach and Davidge and the statements there made by them are not denied by the defendant.

Defendant's evidence conclusively shows that all the preferred stock of the defendant company was sold by it to the Power and Light Securities Company and that it resold the stock through the employees of the defendant and others and that the commissions due the salesmen were paid by it; that when a sale was made they notified defendant's transfer agent and he issued the stock and mailed or delivered it to the purchaser.

It also appears that the $1,500 paid by the plaintiff for the stock in question was paid to the defendant, deposited in its bank account on the same date the check was issued and on the same date defendant issued its check for the same amount payable to Power and Light Securities. Defendant's evidence is that no authority was given Barnett by the Power and Light Securities or by defendant to enter into a repurchase agreement with a purchaser of stock.

Plaintiff testified that in 1933 she tendered Schmulbach, defendant's superintendent, the stock and demanded her money.

It is apparent that under defendant's evidence there was in fact no express agency between Barnett and the defendant, and that if the relationship of principal and agent with the resultant consequences of it existed, it must arise from the conduct of the defendant in holding him out as its agent.

The rule is that one who holds out another as his agent to act for him in a given capacity, and by his

habits and course of dealing, justifies the inference that such other is authorized to act as his agent, whether it be in a single transaction or in a series of transactions, will not be heard to deny the agency to the prejudice of an innocent party, who has been led to rely upon the appearance of authority in the agent. *Union Stock Yard & Transit Co. v. Mallory, Son & Zimmerman Co.*, 157 Ill. 554. This rule arises out of the application of the principle of estoppel and may be applied in favor of a third person even though as between the persons charged with the consequences of the relation, it does not in fact exist. 2 C. J. S. Agency Sec. 29.

Plaintiff testified that she had known Barnett for many years and knew he was in the employ of the defendant. In view of this and her former dealings with him in the purchase of stock, the possession by him of the receipt forms of the defendant, acknowledging purchase of stock, the newspaper advertisements of the defendant published only a few days prior to plaintiff's purchase were of such a character and such a representation that Barnett possessed authority to sell stock as its agent that it cannot now deny the existence of that relationship. However a mere holding out of an agent as having authority to sell stock and collect for the same does not carry with it an implication that he also possesses authority to make a repurchase agreement or to agree on behalf of its principal that the money will be returned if the purchaser is not satisfied with the stock at any time in the future.

An agent who is authorized merely to sell personalty and to collect and turn over the money for the same has not the power to bind the principal by an agreement to repurchase the property, which promise is made by the agent as an inducement to the consummation of the sale. *Murray v. Standard Pecan Co.*, 309 Ill. 226, 2 Am. Jur. Agency, § 123.

It is our conclusion that the items of evidence referred to as establishing the fact that Barnett was held out by the defendant as its agent with authority to sell its stock do not furnish any proof that he also possessed the authority to make the repurchase agreement.

Plaintiff contends that defendant's acceptance of the money paid by plaintiff constitutes a ratification of Barnett's acts. The acceptance of the money, knowing that Barnett sold the stock would constitute a ratification of his agency in the sale of the stock but it would not be a ratification of the repurchase agreement unless it was shown that it had full knowledge of it.

In *Murray v. Standard Pecan Co.*, the court said: "There is a rule that where a principal, with knowledge that his agent has exceeded his authority in securing a contract, attempts to enforce the contract the agent had authority to make, he will not be permitted to do so and repudiate the agent's fraud or unauthorized act in securing it. That rule applies to executory contracts, but where, as in this case, the only authority of the agent is to unconditionally sell stock, collect and account to his principal for the proceeds of the sale, and without his principal's knowledge the agent agrees that his principal will repurchase the stock, the principal is not bound by the unauthorized agreement of the agent. So far as the principal is concerned the sale is not conditional, and retaining the money for the stock under such circumstances is not a ratification of the agent's unauthorized agreement. *Wheeler v. Northwestern Sleigh Co.*, 39 Fed. 347; *Finance Co. of Pennsylvania v. Pittsburg Coal Co.*, 65 Minn. 442; *Davenport Loan Ass'n v. North American Fire Ins. Co.*, 16 Iowa, 74; 2 Corpus Juris, 515; *Tulane University v. O'Connor*, 192 Mass. 428; *Bryant v. Moore*, 45 Am. Dec. 96. See, also, note to *Brewing Co. v. Tourtellotte*, 29 L. R. A. (N. S.) 210."

Other evidence bearing upon the question of Barnett's authority to make the repurchase agreement is to be found in the testimony of Mack Morse and Lunk Caldwell wherein they quoted Davidge and Schmulbach as saying at the employees' meetings which Morse attended, that the company would "cash the stock any time a purchaser saw fit to cash it." Conceding that it was a direction to the employees to make a repurchase agreement, as distinguished from mere "puffing," it still lacks that essential element of authority from the defendant to Davidge and Schmulbach to give the authorization. Davidge was the superintendent of transportation at Cairo and Schmulbach its general superintendent at that place. There is nothing in those positions from which an authorization to make an agreement to repurchase the stock could arise.

In *Brown v. Fire Ins. Co.*, 274 Ill. App. 414, it was held that a president of a corporation did not have authority by virtue of his office to purchase his corporation's own stock and that such authority could be conferred only by resolution of the board of directors and cited text writers and decisions of courts in other jurisdictions in support.

The evidence is conclusive that the defendant's board of directors never by resolution authorized Davidge and Schmulbach to make repurchase agreements or to authorize them to confer such authority upon employees who were directed to sell the stock.

Since defendant's acts in holding Barnett out as its agent was limited to authority to sell stock he could only be regarded as a special agent with limited authorization for that special purpose and when plaintiff undertook to deal with him upon a matter outside his apparent scope of authority she did it at her own risk. The duty devolved upon her to acquaint herself with the extent of Barnett's assumed authority. *Murray v. Standard Pecan Co., supra.*

Plaintiff contends that the evidence warrants the

application of the rule of estoppel, that defendant's acts and conduct in its dealings with plaintiff estops it from denying that Barnett had authority to make the repurchase agreements.

Before the rule can be applied all the elements of estoppel must be present. There must be conduct on the part of the one claimed to be estopped which was calculated to mislead, and it must be under circumstances which justified the claim that the principal should have expected that the conduct or representations would be relied and acted upon and it must appear that they were relied and acted upon in good faith to the injury of the innocent party.

To constitute estoppel against the defendant the conduct or representation relied upon must come from the defendant. The evidence as to what Davidge and Schmulbach said at the meetings did not come from the defendant but as has been pointed out were the unauthorized representations of defendant's employees. The advertisements and the receipt book has already been discussed. The evidence in reference to the defendant having accepted four shares of stock from the plaintiff in 1928 pursuant to an agreement she had with Barnett when she bought the stock in 1926 cannot be reasonably said to have been made by the defendant under circumstances calculated to mislead the plaintiff in the purchase of this stock in July, 1930, neither could it be said that defendant could reasonably have expected that its acts in 1928 in accepting the stock would be relied and acted upon in 1930. The 1928 act was a single transaction and it does not appear that there was any other transactions of a like or similar character between the parties after 1928 and before July, 1930. The rule of estoppel cannot be applied in this case.

For the reasons given the judgment of the circuit court is reversed.

*Judgment reversed.*