**Douglas R. Crittendon, Plaintiff-Appellee, v. State Oil Company, an Illinois Corporation, Defendant-Appellant.**

**Gen. No. 66–59M.**

Second District.

December 27, 1966.

McDonald, Schmidt & Baker, and Vincent D. McConnell, all of Chicago, for appellant.

Joslyn, Kell & Conerty, of Woodstock, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

This is an appeal by the defendant, State Oil Company (herein called State), from a judgment rendered against it by the trial court in a matter heard without a jury. The plaintiff, Douglas R. Crittendon, brought this suit for the recovery of damages to his automobile caused by Gary Mendenhall (herein called Mendenhall), the operator of a service station owned by State.

The plaintiff took his Chevrolet car to the service station operated by Mendenhall and, while there, discussed the problem of its faulty wheel bearings with Mendenhall. Apparently, he asked Mendenhall if he had repaired Chevrolets; Mendenhall answered affirmatively, and stated that he had previously worked at a Chevrolet garage.

Plaintiff left his car with Mendenhall to have the necessary repair work done. Several days later, Mendenhall—after completing repair work on another car—had his wife deliver such car to the owner in a nearby town and, in order to bring her back to the service station, he followed her in plaintiff's car to her destination. While en route to the other town, plaintiff's car, which Mendenhall was driving, slid on some ice, went off the road, and was thereby extensively damaged.

The service station was owned by State and displayed two identifying signs, each containing only the word "State." One sign was located at the corner of the premises and the other on the building. No other signs were on the premises, and in this respect there was no identification of Mendenhall or any indication of his relationship with State in the operation of the station.

The trial court found that the presence of the two signs containing the word "State," the absence of any

114

signs identifying Mendenhall, the visibility of tools, a grease rack, and a place on the premises where cars could be repaired, justified plaintiff's assumption that Mendenhall was the agent of State and that State was estopped to deny such agency.

The written agreement entered into between State and Mendenhall was introduced in evidence. Proof of various transactions between State and Mendenhall, pertaining to the issue of whether Mendenhall was an actual agent of State or an independent contractor, were admitted in evidence. However, in his brief and argument, plaintiff no longer contends that Mendenhall was an actual agent of State, but rather, urges that under the existing facts there was an agency by estoppel. Thus, the terms of the written agreement between Mendenhall and State and the various transactions between them—all of which were unknown to plaintiff—become irrelevant.

■ In Morse v. Illinois Power & Light Corp., 294 Ill App 498, 14 NE2d 259 (1938), at pages 503 and 504, the court stated that:

> "The rule is that one who holds out another as his agent to act for him in a given capacity, and by his habits and course of dealing, justifies the inference that such other is authorized to act as his agent, whether it be in a single transaction or in a series of transactions, will not be heard to deny the agency to the prejudice of an innocent party, who has been led to rely upon the appearance of authority in the agent. Union Stock Yard & Transit Co. v. Mallory, Son & Zimmerman Co., 157 Ill 554. This rule arises out of the application of the principle of estoppel and may be applied in favor of a third person even though as between the persons charged with the consequences of the relation, it does not in fact exist. 2 CJS Agency Sec 29."

115

Also see: 1 ILP, Agency, §§ 14 and 128.

■ The conduct relied upon as the basis for the estoppel must be such that an ordinarily prudent person would consider it as consistent only with the fact that a designated person is the agent of another and has authority to perform a particular act. Such conduct is that which is calculated to mislead in event the principal so holding out such person as an agent were permitted to deny the existence of the agency. Faber-Musser Co. v. William E. Dee Clay Mfg. Co., 291 Ill 240, 244, 245, 126 NE 186 (1920) ; 1 ILP, Agency, § 128.

■ It is essential to the application of the doctrine of estoppel that such conduct or representations be relied and acted upon; and it must appear that there was reliance and action thereon, in good faith, by the innocent third party to his injury. Tri-City Transp. Co. v. Bituminous Cas. Corp., 311 Ill App 610, 615, 616, 37 NE2d 441 (1941) ; Morse v. Illinois Power & Light Corp., supra, 507.

■ In the case at bar, in order to constitute estoppel against State, the conduct or representations relied upon by plaintiff must have come from State. Thus, in order to recover, plaintiff had to prove that he had knowledge of and, in good faith, relied upon representations and conduct of State, which indicated that Mendenhall was in fact acting as agent for State in repairing plaintiff's car and in driving it at the time of the accident. Merchants' Nat. Bank of Peoria v. Nichols & Shepard Co., 223 Ill 41, 50, 79 NE 38 (1906) ; Bailey v. Walters, et al., 202 Ill App 422, 425, 426 (1916).

■ The sole representations or acts urged as the basis for the application of estoppel against State consist of its act of placing two signs containing the word "State" on the filling station premises; and the visibility of tools, a grease rack and a place on the premises where cars could be repaired. There is no evidence that State prohibited Mendenhall from placing other signs on the station designating his capacity or position in the opera-

tion of the station. His failure to so identify himself is not conduct that can be attributed to State. It is only the conduct or representation of the alleged principal—not the supposed agent—which can be set up as a basis for estoppel.

Under the circumstances of this case, we do not believe the conduct of the defendant was sufficient to justify the assumption by plaintiff that Mendenhall was acting as State's agent. The evidence indicates that plaintiff made purchases of oil and gasoline for cash at this particular station on prior occasions. However, he neither carried a credit card of nor a charge account with State, and he received no statements or receipts bearing State's name.

The signs alone might indicate that this service station sold State products, either to the exclusion of, or in preference to, other competitive brands. There may be service stations which carry on their premises only the name of a particular line of gasoline and oil products which they sell. However, we do not believe that the prominent display of such brand name or symbol alone, would necessarily warrant the assumption that such service station was being operated as an agency of the owner of the brand name or symbol. See: Trust Co. of Chicago v. Sutherland Hotel Co., 389 Ill 67, 72, 73, 54 NE2d 771 (1945).

The plaintiff relies upon Burke v. Piper's Super Service Stations, 312 Ill App 656, 38 NE2d 785 (1942) as supporting his contention that State's signs were sufficient to give rise to an agency by estoppel. In Burke, the defendant, Piper's Super Service Stations, sought to avoid liability for injury suffered by the plaintiff who fell on its gas station premises, by asserting that it neither owned nor operated the station in question. The defendant contended that the attendant operating the station was an agent of a Mr. Pittel, who allegedly leased the station from Silver Flyer Petroleum Company.

117

Defendant thus contended that it had no connection with the operation of the station.

The court noted that the alleged lease between Pittel and Silver Flyer Petroleum Company was lost; that the main office of the last mentioned company was the same as that of the defendant; that the same person was president of each corporation; that the evidence showed that the defendant, itself, did in fact operate many of its stations under the name of "Piper's Super Service Station"; that the name Silver Flyer Petroleum Company did not appear on the station; and that the station in question was known as Piper's Super Service Station No. 12. The court also observed that Pittel was neither present at the station at the time of the injury, nor did he appear in court at the trial.

This is a brief synopsis of the factual background of the Burke case which led the reviewing court to the conclusion that "upon the facts of this case," the signs were a sufficient holding out to warrant the judgment against the defendant. We believe that the court reached its decision because of the bizarre factual background we have noted; and that Burke is not authority for the proposition that, standing alone, a sign containing only the words "Piper's Super Service Station" was sufficient representation to give rise to the doctrine of agency by estoppel. Further, the question of plaintiff's actual knowledge of and reliance upon the representation—essential to the application of the doctrine of estoppel—apparently was not considered in Burke.

In the case at bar, we do not believe that the evidence proved that the plaintiff relied on the signs as evidencing that Mendenhall was the agent of State. It is true that the plaintiff testified that he believed he was leaving his car with a representative of State, but he did not testify that this conclusion was based upon the inference he drew from the signs. There is no evidence that he had otherwise dealt with State or relied upon the

reputation of State. Plaintiff had purchased products from the station only within the previous period of two months—the same period of time that Mendenhall had operated the station—and he conversed with Mendenhall concerning his experience in the repair of Chevrolets. No inquiry was made concerning Mendenhall's business relationship with State.

The evidence is consistent with the conclusion that the plaintiff was relying upon his dealings with Mendenhall and the latter's representations relative to his qualifications to repair Chevrolet automobiles, rather than any holding out by State that the repair work to be done on his car would be done by an agent of State. We do not believe that the evidence justifies the conclusion that the plaintiff had the repair work done, or dealt with the station in question, in reliance upon a holding out that he was dealing with State's agent. Thus, even if the presence of the two signs and the visibility of a grease rack, tools, and a place on the premises where cars could be repaired, could be said to be a holding out sufficient to give rise to an agency by estoppel—which we do not believe to be the case—the record before us does not support the conclusion that the plaintiff acted in reliance thereon.

██ We are not unmindful that the trial court, as the trier of facts, found that State had held itself out as the principal operating the station and that the plaintiff relied upon such holding out. However, the facts relied upon as constituting the holding out are not in dispute, and we do not believe, as a matter of law, that they were sufficient to support the doctrine of agency by estoppel. Thus, the rule that we may set aside the factual findings of the trial court only when contrary to the manifest weight of the evidence, has no application. Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 309, 175 NE2d 785 (1961) ; Ill Rev Stats 1965, c 110, par 92(3) (a). As to the question of whether the plaintiff relied upon the signs as indicating that he was dealing with State,

■

we believe that the trial court's finding of such reliance is unwarranted from the manifest weight of the evidence. To us, the opposite conclusion is clearly evident. See: Isham v. Cudlip, 33 Ill App2d 254, 272, 179 NE2d 25 (1962); Rude v. Seibert, 22 Ill App2d 477, 483, 161 NE2d 39 (1959) and Tri-City Transp. Co. v. Bituminous Cas. Corp., supra, 617.

For the reasons indicated, the judgment of the trial court is hereby reversed and judgment is entered herein for the defendant.

Judgment reversed.

MORAN, P. J. and SEIDENFELD, J., concur.