THE NORTHERN TRUST COMPANY, as Ex'r of the Estate of Henry Stoll, Deceased, Plaintiff-Appellant, v. ST. FRANCIS HOSPITAL *et al.*, Defendants-Appellees (Chowdary Adusumilli *et al.*, Defendants).

First District (4th Division)   No. 86—0887

Opinion filed March 17, 1988.

John J. Lowrey, of Chicago, for appellant.

Cassiday, Schade & Gloor, of Chicago (Dennis A. Ferraro and Michael J. Gallagher, of counsel), for appellee St. Francis Hospital.

Sweeney & Riman, Ltd., of Chicago (Georgene M. Wilson, of counsel), for appellee Medical Emergency Service Associates.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, the Northern Trust Company, as executor of the estate of Henry Stoll (decedent), brought, in the circuit court of Cook County, a wrongful death action alleging medical malpractice against defendants St. Francis Hospital in Blue Island, Illinois, Medical Emergency Service Associates, Inc., Chowdary Adusumilli, M.D., and John Van de Roovaart, M.D. The trial court dismissed the individual physicians prior to trial. A jury returned a verdict in favor of the remaining defendants.

Plaintiff appeals from the judgment entered on the verdict. Plaintiff contends the trial judge erred by: (1) granting summary judgment for defendants on the issue of actual agency between Dr. Adusumilli and St. Francis Hospital, (2) refusing several of plaintiff's tendered jury instructions, (3) limiting plaintiff's opening statement, (4) admitting various items and testimony into evidence which defendants did not reveal during discovery, and (5) allowing the issue of decedent's contributory negligence to go to the jury.

We affirm the judgment of the trial court.

BACKGROUND

The trial adduced the following facts. On August 19, 1976, at 1:33 a.m., decedent, accompanied by his wife, entered the emergency room at St. Francis Hospital in Blue Island, Illinois. He complained of chest pain that radiated down both of his arms. A nurse on duty took a brief history of decedent, informed Dr. Adusumilli of decedent's symptoms, and ordered an electrocardiogram. The nurse testified that decedent appeared alert; his skin appeared warm and dry. Decedent lacked the breathing problems and severe pain associated with heart attacks. The orderly who administered the electrocardiogram testified that decedent's skin was warm, dry, and possessed normal color; decedent also was not short of breath.

Dr. Adusumilli examined decedent at 1:50 a.m. His record reflects that decedent had no difficulty breathing and had had similar pain on prior occasions due to a gastric disorder. Decedent felt better

sitting up than lying down and felt better also after receiving an antacid, both consistent with a gastric disorder. Decedent had a prior normal electrocardiogram, and the electrocardiogram which he received that night did not conclusively show that he was having a heart attack.

Dr. Adusumilli telephoned decedent's family physician, Dr. Van de Roovaart, and reported to Van de Roovaart his findings. These included the fact that decedent's pain decreased with a change of position and a dose of antacid. Further, decedent's electrocardiogram did not conclusively show any signs of a heart attack.

Dr. Van de Roovaart told Dr. Adusumilli that he knew decedent well, had treated him on two prior occasions for similar pain, and that decedent was receiving treatment for ulcers. After listening to Dr. Adusumilli, Dr. Van de Roovaart diagnosed decedent's pain as resulting from his gastric disorder and not from a heart attack. Both physicians concurred in this diagnosis and agreed to discharge decedent.

Dr. Adusumilli discharged decedent at 3:15 a.m., with instructions that decedent see Dr. Van de Roovaart later that morning. Decedent walked out of the emergency room without pain and apparently healthy. Approximately two hours later, however, decedent lost consciousness at his home. At 5:30 a.m., he was returned to the hospital emergency room in cardiac arrest. Dr. Van de Roovaart was notified minutes later; he immediately admitted decedent and called in a heart specialist as a consultant. Decedent died at approximately 6:50 a.m.

On the day of decedent's death, Dr. Adusumilli was not an employee of the hospital, but rather was an employee of Medical Emergency Service Associates, Inc. (MESA). St. Francis Hospital hired MESA to provide it with emergency room physicians. The contract between the hospital and MESA granted MESA the sole right to select emergency room physicians and to establish their schedules. MESA paid the physicians and collected the fees for the physicians' services. The fees were the property of MESA. This contract was solely between the hospital and MESA; Dr. Adusumilli was not a party to this contract.

The contract between MESA and Dr. Adusumilli provided that Dr. Adusumilli would be an employee of MESA and not the hospital. In addition to paying their physicians and establishing schedules for them, MESA operated its own training program for its physicians and maintained its own separate libraries for them at each hospital where they practiced.

In December 1977, plaintiff filed its original complaint against Drs. Adusumilli and Van de Roovaart and St. Francis Hospital. The complaint alleged negligence arising not only from plaintiff's treatment in 1976, but also arising from a prior emergency room visit in 1974. The trial court granted the hospital's motion to dismiss. Plaintiff filed an amended complaint in September 1978. The amended complaint named the same defendants, but omitted the allegations of negligence arising from decedent's 1974 emergency room visit. In April 1980, plaintiff filed a second amended complaint, adding MESA as a defendant. Plaintiff alleged that Dr. Adusumilli was its agent.

In 1982, the trial court dismissed Dr. Adusumilli from the litigation pursuant to a settlement agreement. In May 1985, the trial court dismissed Dr. Van de Roovaart from the litigation, also with plaintiff's consent.

The hospital moved for summary judgment on the issue of whether Dr. Adusumilli was its actual agent. The hospital also sought an *in limine* order precluding plaintiff from asserting against it at trial a theory of apparent agency or agency by estoppel.

The trial judge granted summary judgment for the hospital on the theory of actual agency. The trial judge found no genuine issue of material fact regarding plaintiff's allegation that Dr. Adusumilli was the actual agent of the hospital. The trial judge, however, denied the hospital's motion *in limine* on the issue of apparent agency. As a result, the cause proceeded to trial against the hospital on the theories that: (1) Dr. Adusumilli was the hospital's apparent agent; therefore, it was liable for his negligence, and (2) the hospital breached its own duty of care to decedent through its own employees, such as the emergency room nurse. The cause proceeded to trial against MESA on the theory that Dr. Adusumilli was its actual agent; therefore, it was liable for his negligence.

The cause was tried to a jury. In addition to the above-mentioned facts, the trial produced conflicting evidence that Dr. Adusumilli was negligent in his treatment of decedent. On June 10, 1985, the jury returned a verdict in favor of defendants. The trial judge subsequently entered judgment on the verdict, awarded defendants costs, and denied plaintiff's post-trial motion. Plaintiff timely appeals.

OPINION

I

Plaintiff first contends that the trial judge erred by granting summary judgment for defendants on the issue of actual agency be-

tween Dr. Adusumilli and St. Francis Hospital. We stress at the outset that the summary judgment was only on the issue of actual agency. The jury decided the issue of apparent agency between the physician and the hospital.

■ A trial court should grant a motion for summary judgment only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.) In determining whether a genuine issue as to any material fact exists, the court must construe the pleadings, depositions, and affidavits most strictly against the movant. A triable issue, which precludes summary judgment, exists where there is a dispute as to material facts, or where, the material facts being undisputed, reasonable persons might draw different inferences from the facts. Accordingly, the right to summary judgment must be clear and free from doubt. *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 714, 399 N.E.2d 198, 202-03.

Summary judgment is appropriate in medical malpractice cases generally, where no genuine issue exists as to any material fact. (*Bennett v. Raag* (1982), 103 Ill. App. 3d 321, 326, 431 N.E.2d 48, 51.) Plaintiff is correct that the existence and scope of an agency relationship are usually questions of fact to be decided by the trier of fact, unless the parties' relationship is so clear as to be undisputed. (*St. Ann's Home for the Aged v. Daniels* (1981), 95 Ill. App. 3d 576, 579, 420 N.E.2d 478, 481.) Summary judgment is appropriate, however, in medical malpractice cases to determine issues of agency. See *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 399 N.E.2d 198.

■ Generally, the decision to treat a patient in a particular manner is a medical question entirely within the discretion of the treating physician and not the hospital. Accordingly, the negligence of a physician in the treatment of a patient cannot be imputed to the hospital where the physician is not an agent or under the direction of the hospital. Moreover, although a hospital may be liable for injuries to a patient caused by the negligence of its agents or employees, a hospital is not liable for the acts of one who renders medical care as an independent agent outside the control of the hospital. 79 Ill. App. 3d at 714, 399 N.E.2d at 203.

■ Applying these principles to the instant case, we conclude that the nonexistence of an actual agency relationship between Dr. Adusumilli and the hospital was so clear as to be undisputed. The un-

contradicted evidence reveals that the hospital neither employed nor paid Dr. Adusumilli. Rather, Dr. Adusumilli was hired, trained, employed, scheduled, and paid by MESA. Dr. Adusumilli, therefore, lacked the necessary employer-employee or actual agency relationship with the hospital required to impose vicarious liability on a *respondeat superior* theory. Consequently, we hold that the hospital's right to summary judgment is clear and free from doubt. We uphold the trial judge's grant of summary judgment for defendants on the issue of actual agency between Dr. Adusumilli and the hospital.

## II

■ Plaintiff next claims that the trial judge erred in refusing several of its tendered jury instructions. We note at the outset the controlling principles. Plaintiff is correct that a litigant has the right to have the jury instructed upon his theory of the case when pleadings and evidence exist that support his theory. It is error, however, to give an instruction not based on evidence adduced at trial. *Vincent v. Wesolowski* (1967), 87 Ill. App. 2d 477, 484-85, 232 N.E.2d 120, 125.

Further, the trial court has great discretion as to the form of jury instructions. A reviewing court will not reverse a trial court for erroneously refusing a tendered instruction unless prejudice has resulted. (*Malek v. Lederle Laboratories* (1984), 125 Ill. App. 3d 870, 872, 466 N.E.2d 1038, 1039.) The test in determining the propriety of tendered instructions is whether the jury was fairly, fully, and comprehensively informed as to the relevant principles, considering the instructions in their entirety. *Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 723, 457 N.E.2d 85, 93.

## A

■ We first discussed the issue of actual agency between Dr. Adusumilli and the hospital. We now turn to the issue of apparent agency between the physician and the hospital. Plaintiff claims that the trial judge erred in giving the following instructions to the jury:

"The plaintiff has the burden of proving each of the following propositions with respect to the issue of apparent agency:

(1) That St. Francis Hospital placed Chowdary Adusumilli in a situation that led Henry Stoll to believe that an agency relationship existed.

(2) That Henry Stoll reasonably relied on such action.

(3) That if Henry Stoll had known that Chowdary Adu-

sumilli was not an agent of the hospital, he would have taken a different course of action.

If you find Chowdary Adusumilli was the apparent agent of the defendant St. Francis Hospital at and before the time of this occurrence, any act or omission of Chowdary Adusumilli at that time was in law the act or omission of the defendant St. Francis Hospital."

Pointing to the requirement of decedent's detrimental reliance, plaintiff contends that this is an instruction for equitable estoppel and not one for apparent agency. Plaintiff argues that the "law of apparent agency does not require proof of a change in position." Since it did not plead equitable estoppel, plaintiff argues that the trial judge erred in giving the instruction.

"Apparent authority," or "authority by estoppel," flows from the acts of a principal and is distinguished in the case law from "implied authority," which derives from circumstantial evidence. (*Devers v. Prudential Property & Casualty Insurance Co.* (1980), 86 Ill. App. 3d 542, 545-46, 408 N.E.2d 462, 465.) Apparent authority arises when a principal creates, by its words or conduct, the reasonable impression in a third party that the agent has the authority to perform a certain act on its behalf. The principal, having placed the agent in a situation where he may be presumed to have authority to act, is estopped as against the third person from denying the agent's apparent authority. *Crawford Savings & Loan Association v. Dvorak* (1976), 40 Ill. App. 3d 288, 292-93, 352 N.E.2d 261, 264.

The doctrine of apparent agency is based on the doctrine of equitable estoppel. (*Crittendon v. State Oil Co.* (1966), 78 Ill. App. 2d 112, 115, 222 N.E.2d 561, 563-64, quoting *Morse v. Illinois Power & Light Corp.* (1938), 294 Ill. App. 498, 503-04, 14 N.E.2d 259, 261-62.) Both doctrines, when used to bind a principal as against a third person, are based on the same elements; there is no practical difference between them. (3 Am. Jur. 2d *Agency* §81 (1986).) To prove apparent agency, one must establish: (1) the principal's consent to or knowing acquiescence in the agent's exercise of authority, (2) the third person's knowledge of the facts and good-faith belief that the agent possessed such authority, and (3) the third person's reliance on the agent's apparent authority to his or her detriment. 3 Am. Jur. 2d *Agency* §80 (1986).

A third person cannot invoke the doctrine of apparent agency, thereby establishing rights against the principal, without detrimental reliance. (*Crittendon v. State Oil Co.* (1966), 78 Ill. App. 2d 112, 116, 222 N.E.2d 561, 564, citing *Morse v. Illinois Power & Light Corp.*

(1938), 294 Ill. App. 498, 507, 14 N.E.2d 259, 263; 3 Am. Jur. 2d *Agency* §80 (1986).) The rationale for this requirement is simply that the courts developed the doctrine of estoppel to prevent injustice or fraud. Consequently, there can be no estoppel where the person claiming it has not relied on the representation to his or her detriment. *Gasbarra v. St. James Hospital* (1979), 85 Ill. App. 3d 32, 45, 406 N.E.2d 544, 555, quoting 18 Ill. L. & Prac. *Estoppel* §23 (1956).

Citing decisions from foreign jurisdictions, plaintiff contends that these principles should not apply to the instant case. Plaintiff states that "[o]ther courts have found apparent agency in medical malpractice emergency room cases without necessitating a finding of equitable estoppel. These courts look at the totality of the circumstances involved in a case, require a general holding out by the hospital and infer a reliance upon the holding out."

■ As explained above, Illinois courts do not infer detrimental reliance. We have applied the doctrine of equitable estoppel, with the requirement of detrimental reliance, to cases such as the one at bar. (*Sztorc v. Northwest Hospital* (1986), 146 Ill. App. 3d 275, 279, 496 N.E.2d 1200, 1202; *Gasbarra v. St. James Hospital* (1979), 85 Ill. App. 3d 32, 45, 406 N.E.2d 544, 555.) Applying the above principles to the instant case, we find no error in the trial judge's instruction on the apparent agency between the hospital and the physician.

### B

Plaintiff raises numerous other allegations of error regarding the trial judge's instructions to the jury. We will not further lengthen this opinion by discussing each issue. After carefully reviewing the instructions in their entirety, we conclude that the jury was fairly, fully, and comprehensively informed as to the relevant legal principles.

### III

■ Plaintiff next contends that the trial judge erred by limiting its opening statement to the jury. The following colloquy occurred during plaintiff's opening statement:

"[Plaintiff's Counsel]: Why then are we here and what is the issue to be decided?

MESA is the corporation that supplies the doctors—

[Defense Counsel]: If your Honor please, I would object to any discussion of issues, and I think a recitation of the facts may be appropriate.

THE COURT: Yes. The opening statement should be confined to what Counsel expects the evidence to show."

The purpose of an opening statement is to inform the jury what facts the parties intend to prove and not to instruct the jury on questions of law. (*Zelinski v. Security Lumber Co.* (1985), 133 Ill. App. 3d 927, 933, 479 N.E.2d 1091, 1096, citing *Geiselman v. Strubhar* (1939), 302 Ill. App. 23, 25, 23 N.E.2d 383, 384.) The question of whether and to what degree arguments or remarks of counsel prejudiced a party is within the sound discretion of the trial court, which will not be disturbed on review absent clear abuse. *Zelinsky*, 133 Ill. App. 3d at 933, 479 N.E.2d at 1096.

Applying these principles to the instant case, we conclude that the trial judge's ruling was proper and caused no prejudice to plaintiff. Plaintiff attempted to argue its position on Dr. Adusumilli's various agency relationships with the hospital and MESA. This was not a discussion of the facts which plaintiff believed the evidence would show. The trial judge, therefore, was correct in sustaining defendants' objection. Further, both before and after the above-quoted colloquy, plaintiff properly stated facts which it believed the evidence would show, including those facts upon which plaintiff based its agency argument. We hold that the trial judge's ruling was not a clear abuse of discretion and did not deny plaintiff a fair trial.

## IV

Plaintiff next claims that he was denied a fair trial as a result of the trial court's admission into evidence of various items and testimony which defendants did not reveal during discovery. Seeking a new trial, plaintiff cites three discovery violations. The decision whether to employ sanctions for a party's noncompliance with discovery rules, as well as the determination of the appropriate sanction, are matters within the trial judge's broad discretion. In determining whether sanctions should be imposed, the trial court must seek to accomplish the discovery rather than to inflict punishment. Furthermore, the trial court's discretion in selecting appropriate sanctions will not be disturbed on appeal unless an abuse is present. *Hengels v. Gilski* (1984), 127 Ill. App. 3d 894, 903, 469 N.E.2d 708, 717.

## A

■ Plaintiff first contends that the trial judge erred by allowing into evidence Dr. Van de Roovaart's medical privileges card, which describes the privileges he enjoyed at the hospital. The record shows that plaintiff requested from the hospital and Dr. Van de Roovaart various documents, including the medical privileges card, pursuant to Supreme Court Rule 214 (107 Ill. 2d R. 214). The hospital never pro-

duced the medical privileges card prior to trial.

Plaintiff contends essentially that the hospital's disregard for his discovery request caused him to form an incorrect view of his case. He points to his opening statement to the jury, wherein he accuses the hospital of holding itself out as available to decedent through its emergency room when it actually was not. Plaintiff stated that Dr. Van de Roovaart could not admit his patients to the hospital; rather, he could only treat his patients who were already admitted. Further, plaintiff's expert witness, Dr. John Galvin, based his testimony on the belief that Dr. Van de Roovaart was empowered only to make social rounds at the hospital.

During the hospital's cross-examination of plaintiff's expert witness, the hospital produced Dr. Van de Roovaart's medical privileges card. The document showed that Dr. Van de Roovaart possessed the authority to admit his patients to the hospital, although the hospital restricted him as to the type of illnesses he could treat. Plaintiff objected, arguing that the hospital violated its discovery request. Plaintiff sought to exclude the card from the evidence, pursuant to Supreme Court Rule 219(c) (107 Ill. 2d R. 219(c)). The trial judge held an *in camera* hearing, determined that the document was not privileged, allowed plaintiff to review the card, and then permitted the hospital to use the card in cross-examining plaintiff's expert witness.

After reviewing the record, we conclude that the trial judge acted well within his discretion in admitting Dr. Van de Roovaart's medical privileges card into evidence. Plaintiff's allegations of unfair surprise lack merit. The evidence discovered prior to trial contains clear proof that Dr. Van de Roovaart could admit his patients to the hospital. Dr. Van de Roovaart testified in his deposition that he could admit patients to the hospital under his name. Although the hospital did not allow Dr. Van de Roovaart to treat several types of illnesses, he could nevertheless admit his patients to the hospital. His medical privileges card, therefore, merely contained information that was already discovered prior to trial. We hold, therefore, that the admission of Dr. Van de Roovaart's medical privileges card into evidence caused plaintiff no prejudice.

## B

■ Plaintiff next contends that MESA violated plaintiff's discovery request to produce all materials upon which one of MESA's expert witnesses based his opinion. Dr. Alan Rosenberg testified at trial that the chances of decedent leaving the hospital alive, after he was admitted at 6:30 a.m., were only between 10% and 15%. Plain-

tiff contends that this answer was inconsistent with an earlier answer Dr. Rosenberg gave during a deposition prior to trial. Plaintiff accuses MESA of withholding the materials upon which Dr. Rosenberg based his new opinion.

This contention also lacks merit. Plaintiff's cross-examination of Dr. Rosenberg at trial reveals that he gave two separate opinions based on two separate scenarios. At his deposition, Dr. Rosenberg testified that decedent's chances for survival, had he been admitted to the hospital at his first visit at 1:30 a.m., would have been approximately 50% to 60%. When decedent was admitted at 6:30 a.m., his chances of survival decreased to approximately 10% to 15%. Plaintiff's cross-examination ably clarified and harmonized this evidence. We find neither error nor prejudice in Dr. Rosenberg's testimony.

## C

■■■ Plaintiff lastly contends that MESA violated plaintiff's discovery request for the names of all of MESA's witnesses. Dr. Stanley Zydlo, chairman of the board for MESA, testified as to the screening and evaluation of MESA physicians generally and that of Dr. Adusumilli in particular.

This contention is equally without merit. Dr. Adusumilli testified for plaintiff that MESA did not give him a written examination prior to hiring him. Dr. Zydlo testified, however, that he was present when Dr. Adusumilli was interviewed and given a written examination. This was proper impeachment; we find no error or prejudice in Dr. Zydlo's testimony. We hold that none of these allegations were erroneous or denied plaintiff a fair trial.

## V

■■■ Plaintiff lastly claims that defendants committed prejudicial error by raising the issue of decedent's contributory negligence. In its original complaint, plaintiff alleged negligence arising from decedent's 1974 visit to the hospital emergency room, in addition to the negligence arising from decedent's 1976 treatment. Plaintiff, however, omitted this allegation from its amended complaint. Further, during the jury instructions conference, defendants tendered instructions on decedent's contributory negligence. The trial judge rejected the instructions, finding that the trial produced no evidence that decedent was contributorily negligent.

Plaintiff contends that, despite these limitations on presenting its case, defendants mentioned the 1974 visit repeatedly during the trial. Plaintiff argues that defendants raised the issue of decedent's con-

tributory negligence by referring to the 1974 visit.

We disagree. It was plaintiff who first put into evidence the fact that decedent visited the hospital and received an electrocardiogram in 1974. This information was relevant to Dr. Adusumilli's 1976 treatment of decedent. The information did not involve decedent's contributory negligence, but rather explained the circumstances of the 1976 emergency room visit. Further, the trial judge instructed the jury only on defendants' negligence, and never told the jury of the doctrine of contributory negligence. After reviewing the references of which plaintiff complains, we hold that plaintiff suffered no prejudice. See *Politakis v. Inland Steel Co.* (1983), 118 Ill. App. 3d 249, 255, 454 N.E.2d 811, 816.

## VI

■■ Lastly, plaintiff concluded its brief by simply stating "Plaintiff-Appellant does not waive other points asserted in its post-trial motion." It is well settled, however, that an appellant may not make a point merely by stating it without presenting arguments in support of it; this court will not argue a case for an appellant. A reviewing court is entitled to have briefs submitted that are articulate, organized, and that present cohesive legal argument in conformity with supreme court rules. We may deem waived any issue that has not been adequately presented to this court for review. (*In re Application of Anderson* (1987), 162 Ill. App. 3d 815, 819, 516 N.E.2d 860, 869.) We hold, therefore, that plaintiff has waived all issues not argued in its brief. *Williams v. Danley Lumber Co.* (1984), 129 Ill. App. 3d 325, 472 N.E.2d 586.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McMORROW and JOHNSON, JJ., concur.