10 F.3d 1300
 27 Fed.R.Serv.3d 595
 De Etta JOHNSON, Individually and as Conservator of the
Estate of Wanda Johnson and as Next Friend of
Domiauant Johnson, Plaintiff-Appellant,
v.
METHODIST MEDICAL CENTER OF ILLINOIS, Defendant-Appellee.
 No. 92-2937.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 29, 1993.
Decided Dec. 1, 1993.
Rehearing and Suggestion for Rehearing En Banc Denied Dec. 28, 1993.
 
 Leonard Ring (argued), Leslie J. Rosen, Margaret A. McGuire, and Barry Chafetz, Ring & Associates, Chicago, IL, for plaintiff-appellant.
 James R. Morrison (argued) and Daniel L. Johns, Westervelt, Johnson, Nicoll & Keller, Peoria, IL, for defendant-appellee.
 Before POSNER, Chief Judge, CUMMINGS, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.
 FAIRCHILD, Senior Circuit Judge.
 
 
 1
 Fourteen-year-old Wanda Johnson gave birth to her daughter at defendant-appellee hospital Methodist Medical Center of Illinois ("Methodist"). Wanda subsequently developed a brain disorder, and was later adjudicated incompetent.[1] Plaintiff commenced this medical malpractice action, alleging that Wanda was negligently treated at Methodist.[2] In addition to naming Methodist as a defendant, plaintiff alleges specific acts of negligence against three doctors individually. Those allegations are not before this court. The district court denied plaintiff's motion for leave to file a third amended complaint, and granted summary judgment in favor of Methodist. Although claims against the doctors remained outstanding, the court made the judgment final pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Plaintiff challenges both rulings on her appeal from the district court's judgment. We affirm.
 
 I. UNDISPUTED BACKGROUND FACTS
 
 2
 At 3:00 a.m. on June 30, 1982, Wanda was admitted to Methodist in labor. At 11:30 a.m., Dr. Robert Thompson, Wanda's obstetrician, performed a vaginal examination and ruptured Wanda's membranes. Additional vaginal examinations were performed. Dr. Thompson delivered Wanda's daughter by cesarean section at approximately 5:30 p.m. that day.
 
 
 3
 Following delivery, Wanda's blood pressure was significantly elevated, she began coughing up mucous, and she experienced intense abdominal pains. These symptoms, which continued and became worse over the next nine days, were apparently caused by a severe infection. On July 9, Dr. Thompson performed a partial hysterectomy. On July 14, Wanda endured a number of grand mal seizures. The next day, Dr. Thompson performed an exploratory laparotomy, during which he removed Wanda's ovaries and appendix. After this surgery, Wanda's infection was under control. However, Wanda displayed significant behavioral changes.
 
 
 4
 In addition to Dr. Thompson, other doctors were assertedly involved in negligent treatment of Wanda. Dr. Doughty, an internist who specializes in infectious diseases, saw Wanda at Dr. Thompson's request. Dr. O'Connor, also an internist who specializes in infectious diseases, saw Wanda while Dr. Doughty was on vacation. Plaintiff also refers to "residents," who worked under the supervision of the named doctors, as responsible for negligently treating Wanda.
 
 
 5
 Wanda remained at Methodist for two months. Now in her twenties, she currently functions at less than an eight-year-old level.II. PROCEDURAL HISTORY
 
 
 6
 Plaintiff's former attorneys[3] obtained copies of Wanda's hospital charts on August 27, 1982, and July 2, 1985. Plaintiff commenced this action on March 18, 1988. In her first complaint, plaintiff alleged that Methodist, through Drs. Thompson and Doughty, negligently treated Wanda. Pursuant to Sec. 2-622 of the Illinois Code of Civil Procedure, plaintiff's attorney filed an affidavit stating that he had consulted with physicians knowledgeable about the issues in this action, and that after reviewing Wanda's medical records, the physicians concluded that there was "a reasonable and meritorious cause for the filing of this action." The attached reports of the reviewing doctors conclude that Drs. Thompson and Doughty were negligent.[4]
 
 
 7
 On June 16, 1989, plaintiff filed a motion for leave to amend her complaint to include Dr. O'Connor and unnamed residents, whose involvement in Wanda's treatment was discovered during Dr. Doughty's deposition. On July 7, the court granted the motion and plaintiff filed her first amended complaint.
 
 
 8
 In her second amended complaint, filed August 7, 1989,[5] plaintiff alleged that Methodist, through Drs. Thompson, Doughty and O'Connor, unnamed residents, and operation of its infectious control program, negligently treated Wanda. Specifically, plaintiff alleged that Methodist was negligent by the: (1) failure of the three named doctors and residents to appropriately use antibiotics; (2) failure of Dr. Thompson and residents to obtain appropriate blood cultures; (3) failure of the three named doctors and residents to timely recognize/diagnose Wanda's pelvic catastrophe; (4) failure of Dr. Thompson and residents to timely recognize disseminated intravascular coagulation (a bleeding disorder); (5) failure to obtain a thorough assessment of Wanda's pelvic size or capacity; (6) failure to have an internal pressure catheter or gauge available; and (7) failure to identify Wanda's infectious disease. Thus, plaintiff alleged particular acts of negligence on the part of the named doctors and residents, as agents of Methodist (in numbers 1-4 above). Methodist could only be liable on these charges if the doctors were shown to be Methodist's agents. Plaintiff additionally made three specific allegations against Methodist which are not tied to a distinct individual (in numbers 5-7 above).
 
 
 9
 One of plaintiff's experts, Dr. Zatuchni, was deposed on August 23, 1991; on September 16, 1991, another expert, Mr. Nellis, was deposed.
 
 
 10
 On November 27, 1991, Methodist filed a motion for summary judgment. Methodist's motion was accompanied by documentation and legal argument to show that plaintiff's claims that the doctors and residents were agents of Methodist, and that Methodist's employees failed to obtain a thorough assessment of Wanda's pelvic size or capacity, failed to have an internal pressure catheter or gauge available, and failed to identify Wanda's infectious disease, were without merit.
 
 
 11
 Plaintiff's initial response was to file a motion for leave to file a third amended complaint on January 13, 1992 ("the proposed complaint"); plaintiff maintained that the proposed complaint would render the summary judgment motion moot. In her motion, plaintiff requests leave to amend her complaint to include allegations with respect to the nursing staff and Methodist as an institution, which contentions surfaced during the depositions of Dr. Zatuchni and Mr. Nellis.
 
 
 12
 The proposed complaint alleges that Methodist, through Drs. Thompson, Doughty and O'Connor, unnamed residents, the nursing staff, and operation of the infectious control program negligently treated Wanda. Specifically, plaintiff makes the identical allegations contained in the second amended complaint, and additionally alleges, with respect to the nursing staff: (1) lack of communication between labor and delivery room nurses and medical staff; (2) failure to promptly communicate to Dr. Thompson and residents that Wanda's membranes had ruptured; (3) failure to communicate that the fetal monitor strips were improperly calibrated and in error; (4) failure to chart the rupture of Wanda's membranes; (5) failure to report to Dr. Thompson and residents a decrease in variability noted in fetal monitor strips; (6) negligent discontinuance of the fetal heart monitor; (7) negligent performance of numerous unnecessary vaginal examinations; (8) introduction of bacteria into Wanda's cervix; (9) failure to obtain a clinical evaluation of Wanda's labor progress; (10) negligent provision of morphine to Wanda; and (11) failure to adequately evaluate Wanda's vital signs.
 
 
 13
 With respect to the "hospital staff" (apparently referring to hospital employees), the proposed complaint alleges: (1) failure to communicate the serious nature of Wanda's condition to Dr. Thompson; (2) failure to perform a pelvic examination; and (3) failure to treat Wanda's cervical infection until Dr. Thompson performed the hysterectomy.
 
 
 14
 Finally, with respect to the hospital as an institution, the proposed complaint alleges: (1) failure to timely transcribe the surgical note concerning the cesarean section; (2) failure to monitor and oversee the clinical activities of its nursing staff, residents, and house staff; (3) failure to have an attending physician available to provide continuous care; (4) failure to timely provide a documented medical record; (5) allowance of residents and medical trainees to perform clinical evaluations of Wanda without adequate supervision; (6) failure to provide required information on fetal monitor strips; and (7) failure to provide policies and procedures which would allow its nursing staff to apply proper nursing care.
 
 
 15
 On April 3, 1992, the court denied plaintiff's motion to amend, finding that it was too late in the proceedings to amend the complaint. On April 22, plaintiff filed her response to Methodist's motion for summary judgment. On June 26, the court granted Methodist's motion for summary judgment.
 
 III. DISCUSSION
 A. Motion to Amend Complaint
 
 16
 We review the district court's denial of plaintiff's motion for leave to file her proposed complaint for abuse of discretion; the denial will be overturned only if there was no justifying reason for it. J.D. Marshall Int'l, Inc. v. Redstart, Inc., 935 F.2d 815, 819 (7th Cir.1991).
 
 
 17
 Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." However, leave to amend is not to be automatically granted; the Supreme Court has explained that a court may deny a motion to amend because of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc....." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).
 
 
 18
 Plaintiff's attorney argued to the district court that the proposed complaint's specific allegations were made to meet the summary judgment motion. Apr. 3, 1992 Tr. at 4. In answering the court's question of why an amended complaint had not been filed earlier, plaintiff's attorney answered that he did not feel it was necessary to make specific allegations in a complaint. Id. at 4-5. While unnecessary, plaintiff's attorney believed the specific allegations would make the issues clearer for everyone. Id. at 4-5, 7.
 
 
 19
 At a subsequent hearing on Methodist's summary judgment motion, and in the following written order, the district court noted that plaintiff's attorney failed to provide a valid explanation for why the complaint was not amended earlier. The court decided that four years after commencement of the action was too late to amend the complaint.
 
 
 20
 The district court concluded that the proposed complaint goes beyond the scope of the second amended complaint. Plaintiff herself acknowledges that "[t]hese allegations [of Methodist's negligence as exposed in plaintiff's experts' depositions by mid-September 1991] were not encompassed by the Second Amended Complaint." Mar. 30, 1993 Br. at 3. The proposed complaint brings in additional actors (e.g. the nursing staff), who took alleged actions (or inactions) that are distinct from the allegations raised in the second amended complaint (e.g. failure to communicate).
 
 
 21
 As we view it, plaintiff chose to rest her claims against Methodist on the alleged negligence of the doctors, on the theory that they were Methodist's agents, and otherwise claimed very precise failures of Methodist's employees. When confronted by Methodist's motion for summary judgment, plaintiff realized that she would lose based on the specific claims contained in the second amended complaint. She therefore asked for leave to add a large number of new specific claims. The choice to leave these claims out of the pleadings for so long a time after plaintiff must have known of them, suggests a doubt about being able to prove these failures or, if proved, that they caused Wanda's injuries.
 
 
 22
 Plaintiff asserts that Methodist would not be prejudiced if she is allowed to amend her complaint. We do not agree. First, the preceding complaints made very specific allegations, thus focusing the issues narrowly; it was not unreasonable for Methodist to be taken by surprise by the proposed complaint's new allegations. Second, Methodist moved for summary judgment based on the allegations contained in the second amended complaint, which if granted (as here), removes Methodist from this action. Third, it seems likely that Methodist, as it contends, would have to engage in substantial additional discovery and thus be prejudiced if plaintiff's proposed complaint were accepted. If amendment were permitted, Methodist's success in defeating all the claims in the second amended complaint would not end the lawsuit, and it would have to engage in a new contest on different issues--four years after the action was started.
 
 
 23
 There must be a point at which a plaintiff makes a commitment to the theory of its case. Here, the proposed complaint attempts to add a whole new theory of the case four years after this action was commenced, with no explanation as to why amendment did not take place sooner, except perhaps that plaintiff's attorney felt it was not necessary. But plaintiff had chosen to plead specific negligent acts and omissions in her second amended complaint, and preceding complaints. She did not merely allege that Methodist's agents and employees were negligent, but rather that certain Methodist agents and employees were negligent by reason of specific acts or omissions.
 
 
 24
 Dr. Zatuchni was first contacted by plaintiff with respect to this case in 1990; Mr. Nellis was contacted in October 1990. Presumably plaintiff's attorneys were informed of their experts' opinions before the experts were deposed in August and September 1991. However, even if we accept plaintiff's assertion that she had no knowledge of the new allegations until the summer 1991 depositions, plaintiff did not move to amend her complaint at that time, but instead only sought to do so when faced with the likelihood that Methodist's motion for summary judgment would succeed.
 
 
 25
 We conclude that the district court did not abuse its discretion when it denied plaintiff's motion for leave to file a third amended complaint.
 
 B. Summary Judgment
 
 26
 We review the district court's grant of summary judgment de novo. AHP Subsidiary Holding Co. v. Stuart Hale Co., 1 F.3d 611, 615 (7th Cir.1993). If a motion for summary judgment "is made and supported as provided in [Rule 56 of the Federal Rules of Civil Procedure] ... an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see also Valenti v. Qualex, Inc., 970 F.2d 363, 365 (7th Cir.1992); Wilson v. Williams, 997 F.2d 348, 350 (7th Cir.1993).
 
 
 27
 Plaintiff argued to the district court that it should look to evidence developed in discovery, and that "[t]he depositions of Plaintiff's experts and answers to interrogatories identify numerous issues of material fact to be determined by the fact finder." Apr. 22, 1992 Br. at 6-7. Plaintiff then discussed only those allegations which are contained in her proposed complaint, id. at 8-10, which complaint the district court had not allowed. Plaintiff did not address Methodist's showing on the issues raised by the second amended complaint, i.e. that the named doctors were not Methodist's agents, and that the three allegations against hospital employees regarding pelvic examination, availability of an internal pressure catheter, and identification of Wanda's infectious disease had no merit. In essence, it must have been plaintiff's position that because the second amended complaint alleged negligence in respects specifically described, it would permit plaintiff to claim and prove other and quite different negligent acts and omissions.
 
 
 28
 Plaintiff failed to timely file a statement of genuine issues with her opposing brief, as required by local rule, but later filed such a statement, as directed by the court. In her statement of genuine issues, plaintiff merely restated the new allegations contained in her proposed complaint.
 
 
 29
 The district court noted that plaintiff essentially conceded that Methodist is entitled to summary judgment on the specific claims of the second amended complaint, but rather urged that other claims of negligence exist which Methodist's summary judgment motion did not refute. The court concluded, however, that the additional claims do not fairly arise out of the second amended complaint.
 
 
 30
 Rule 8(a) of the Federal Rules of Civil Procedure requires that a plaintiff make a short and plain statement of claims. Certainly, facts in support of a claim are developed during the discovery process. However, in her first three complaints, plaintiff did not generally plead Methodist's negligence, but rather pled specific failures of the three named doctors, unnamed residents and hospital employees. Methodist and the court had no prior notice that the new allegations in the proposed complaint were the grounds for its claim of negligence against Methodist.
 
 
 31
 A complaint's allegations of negligence may be so specific that the plaintiff waives a claim of negligence based on other and different facts, particularly when plaintiff delays broadening the original claim. Cf. American Nurses' Ass'n v. State of Ill., 783 F.2d 716, 724 (7th Cir.1986) ("A plaintiff who files a long and detailed complaint may plead himself out of court by including factual allegations which if true show that his legal rights were not invaded."). The new allegations in the proposed complaint are distinct from the previous complaints, and thus could properly be deemed irrelevant. With respect to the claims in the second amended complaint, plaintiff failed to present any evidence showing genuine issues of material fact. When plaintiff chose to plead very specific negligent acts and failures, and delayed the pleading of additional acts and failures, she gave up any argument that Methodist had to show the nonexistence of issues of fact as to the proposed additional claims as well. We conclude that the district court properly granted summary judgment in favor of Methodist.
 
 
 32
 C. Finding that Residents were not Methodist's Agents
 
 
 33
 In addition to plaintiff's general challenge to the district court's grant of summary judgment on the grounds that the court improperly ignored plaintiff's new allegations, plaintiff disputes the court's determination that there was no evidence sufficient to raise an issue as to whether or not the residents were Methodist's agents.
 
 
 34
 Plaintiff argues that determination of whether the residents referred to in the second amended complaint are Methodist's agents is a question of fact for the jury, in that the residents were given permission to perform services at Methodist, and Methodist billed the patients "for its services." The district court determined that plaintiff has no support for its claim regarding billing, and plaintiff advances no support to this court.
 
 
 35
 Whether there is an agency relationship between an individual health care provider and a hospital may appropriately be determined on summary judgment. Northern Trust Co. v. St. Francis Hosp., 168 Ill.App.3d 270, 119 Ill.Dec. 37, 522 N.E.2d 699, appeal denied, 121 Ill.2d 572, 122 Ill.Dec. 440, 526 N.E.2d 833 (1988). Such is the situation in the present case.
 
 
 36
 The residents were unnamed in the complaints. Through discovery, Methodist learned that the allegations were against residents who accompanied Dr. Doughty; Dr. Wiser was then identified.
 
 
 37
 Methodist supplied the following evidence to the district court regarding Dr. Wiser: he was a resident of St. Francis Hospital; he saw Wanda under the supervision of Drs. Doughty and O'Connor, who were Assistant Professors at the University of Illinois College of Medicine, where Dr. Wiser was being trained; he was paid by St. Francis; he was not employed or paid by Methodist; and Methodist did not bill patients for his services.
 
 
 38
 In granting the motion for summary judgment, the court concluded that there was no agency relationship between the residents and Methodist, noting that plaintiff had merely argued that this issue is a question of fact. Plaintiff did not point to any facts in support of its position, to contradict Methodist's facts.[6] Plaintiff continues to argue that she "has presented sufficient evidence so that the issue of Dr. Hauser's[7] agency should go to the jury." May 14, 1993 Br. at 12. Nowhere does plaintiff discuss what evidence she has regarding any of the residents. Plaintiff has failed to meet her burden in presenting sufficient facts to show that a genuine issue of material fact exists with respect to the agency issue; in fact, plaintiff has presented no evidence. Therefore, the district court properly granted summary judgment in favor of Methodist.
 
 
 39
 Accordingly, we AFFIRM.
 
 
 
 [1]
 On February 19, 1988, Wanda was adjudicated incompetent and her mother, the plaintiff in this action, was appointed conservator of Wanda's estate
 
 
 [2]
 Jurisdiction is founded on diversity. Illinois law controls all substantive questions
 
 
 [3]
 The record is not clear as to when plaintiff retained her current attorneys, except that they were retained prior to commencement of this action
 
 
 [4]
 One report specifically discusses Dr. Thompson; one report specifically discusses Dr. Doughty; and one report goes into more detail regarding the problems of Wanda's treatment, but does not implicate any individuals by name or job description
 
 
 [5]
 The second amended complaint corrected inconsequential errors in plaintiff's July 7, 1989 first amended complaint
 
 
 [6]
 Neither the district court or the parties cite any Illinois law regarding the factors to consider in determining agency in the medical context. Illinois has undergone some fluctuation in this area. See Uhr v. Lutheran Gen. Hosp., 226 Ill.App.3d 236, 168 Ill.Dec. 323, 589 N.E.2d 723 (1992). The Illinois Supreme Court has recently ruled that a hospital may be vicariously liable for negligent acts of an emergency room physician under the doctrine of apparent authority. Gilbert v. Sycamore Memorial Hosp., 156 Ill.2d 511, 190 Ill.Dec. 758, 622 N.E.2d 788 (1993). Here, plaintiff advanced no argument or evidentiary support for a claim that the residents (or doctors) had apparent authority. Given the nature and circumstances of this case, we do not need to address the particular factors necessary to make a determination of agency under Illinois law
 
 
 [7]
 Plaintiff, for the first time on appeal, names another resident, Dr. Hauser. Dr. Hauser's involvement in this action was never presented to the district court, and therefore is not properly before this court